## JONES v. CITY OF SIOUX FALLS.

1. The Supreme Court cannot amend a bill of exceptions, or determine whether respondent was entitled to have the desired matter inserted therein.
2. The existence in a plank sidewalk, 6 feet wide, of a hole 17 inches long, 7 inches wide, and 2½ inches deep, where one of the planks had broken

off at the end and been forced downward, at a place where the walk had been repaired 3 months before, and to which the attention of no witness had ever been called, though they had frequently been over the walk, is not enough to charge the city, which had no actual notice of the defect, with negligence.

(Opinion filed October 19, 1904.)

Appeal from circuit court, Minnehaha county; Hon. JOSEPH W. JONES, Judge.

Action by Mary J. Jones against the city of Sioux Falls. Judgment for plaintiff. Defendant appeals. Reversed.

*Hosmer H. Keith*, for appellant.

*Davis, Lyon & Gates*, for respondent.

FULLER, J. Plaintiff had judgment in this action to recover damages resulting from injuries sustained by a fall on a sidewalk alleged to be defective, and the defendant appeals.

At the time of settling the bill of exceptions, counsel for respondent asked the court below to insert therein their objection and exception to the introduction of a certain exhibit received in evidence on appellant's behalf. Such request being denied, a similar application, supported by affidavit, is made to this court, with the suggestion that, in disposing of the case, the same be considered as a part of the bill of exceptions. As this court is without jurisdiction to change the record certified on appeal, we can neither grant the amendment nor determine whether the prevailing party may rightfully insist upon having the bill of exceptions contain such matters. Wright v. Lee, 10 S. D. 263, 72 N. W. 895; Hedlun v. Holy Terror Mining Co., 14 S. D. 369, 85 N. W. 861.

The facts disclosed by the record are practically undisputed, and in substance as follows: About 7 o'clock in the

evening of January 24, 1903, respondent was walking from the Merchants' Hotel in Sioux Falls to her place of residence in that city, and the fall of which she complains occurred on a sidewalk, six feet in width, and at a point where a plank had been broken about seventeen inches from the end and forced downward to the ground, leaving a hole of about that length, which was six or seven inches wide and two and a half inches deep. Respondent was unable to state whether the fall was occasioned by her foot slipping into the hole, or by its striking what she considered to be a slightly elevated portion of the plank. She had frequently passed over this walk, but had never noticed this defect until she had fallen and sustained the injury of which she complains. On cross-examination she tes·tified: "Q. Had you seen the hole before? A. There are holes all along there. I didn't particularly notice this hole until the night I fell. I saw it that night when I raised up. I felt there, and I was close to it, and it was quite misty, but I could see there was a hole there. Q. Then you could have seen it before you stepped into it; it was light enough? A. No, sir. Q. How could you see it after you stepped in it better than you could before? A. I was not looking for it. I don't think I could have seen the hole before I stepped into it, standing up. Q. You say you could see it after you fell down? A. I could not just see it when I was going right along. I had a veil on, and I could not see it until after I fell. I had to get close down to it and feel and see the best I could."

Concerning the locus in quo, as it appeared more than a month later, the husband of respondent testified as follows: "I live on the corner of Fourteenth street and Sixth avenue— the southwest corner. I moved onto that place the latter part

of November last year.   My wife was injured on the 24th of
last January.   I was home at that time.   It was along in the
evening when she was injured.   She has pointed out to me the
place where she got injured, the fore part of March, I think.
It was on Second avenue.   The spot was between Second and
Third avenues on Twelfth street, on the north side of the street,
38 feet from the east side of the crosswalk on Second avenue
east.   There was a broken plank at that point in the walk.
There was 17 inches of the plank broken off, and it had drop-
ped down into the ground and froze in.   The south end of the
plank was broken off; the rest of the plank remained there in
the walk.   It had dropped down into the ground and was frozen
into the dirt.   That end was broken; the other end was broken
off kind of slanting.   It was crossgrained and slanted under.
It left a sharp edge on the part that was left on the walk.
With reference to the walk, the sharp edge was about one inch
or two above the level.   It left a sharp edge about an inch
or two above the lever.   That sharp end stuck up.   The ap-
pearance of that break was old.   It was imbedded in the ground
—frozen in.''

Another witness whose attention was called to the con-
dition of the walk some time after the injury was sustained
testified in part as follows:   ''The end of the plank was broken
off on the south side of the walk, and the plank had tipped
down in.   The other part of the plank remained on the 4 by 4,
but stuck over there about as thick as your finger, I should
judge.   It was broken under and frozen in the ground.   The
end where it was broken off was sharp, and stood a little bit
higher—I don't think very much.   It was a little higher than
the walk on the other side of it.   The hole was $2\frac{1}{2}$ inches deep.

The part that had broken off the south end had dropped down and frozen into the ground—imbedded in the ground.    The way the walk ran the hole was the width of the plank—6 inches, I think.    The walk is built of 2 by 6, I think—I didn't measure it.   Cross-examination:   One end of the plank had settled, and the other was about level with the walk—about level with the surface of the walk each side.   I have traveled over this walk from my place coming to town a good deal of the time.   I was familiar with the condition of this walk.   I always came up on the south side.   Q.   Who showed you this break in the walk, the first you saw of it?   A.   Mr. Jones and Mr. Davis were examining it together when I came along. That was the first time my attention was called to it.   Q.   And the first time you ever saw it?   A.   I might have seen, but did not pay any attention to it.   It was not enough of a break to call my special attention to it in traveling over it.   There was nearly 4½ feet of walk remaining all right, undisturbed."

Mr. Nichols, who, in obedience to the direction of the street commissioner, repaired this walk late in the month of October immediately preceding the accident, testified that it was in pretty good condition at that time, and that all holes were then covered by nailing boards one inch in thickness across the entire length of each defective plank.   He further stated that, while the walk was old, he found but three breaks in it; that the one where the injury occurred was not there at that time; and that none of the planks "were liable to be broken most any time from persons stepping on them at different places."

Mr. Bushnell testified as follows:   "I am one of the city council, and a member of the street and ally committee.   I re-

member of last spring examining this particular walk. I found a plank broke about 16 inches from the end, and lay about 2 inches from the top of the other. The condition of the walk north of it was in good shape. I found just that break in it."

Although it was shown that this walk was situated in a populous portion of the city, and in almost constant use by many of the witnesses, including respondent and her husband, the broken plank about which they all testified had never been noticed prior to the accident and, with the exception of respondent, it was seen by none of the witnesses until their special attention was directed thereto several weeks later.

The court having overruled appellant's motion for the direction of a verdict, made at the conclusion of all the testimony, the following instructions were requested and refused: "(1) There is no evidence of actual notice to the city of the alleged defect in the sidewalk, and no sufficient evidence of constructive notice as would render the city liable for the nonperformance of its duty to keep the said walk in repair. (2) You are further instructed that there is no evidence that the alleged defect in the sidewalk, where the plaintiff claims to have fallen, was such a defect as would require any duty on the part of the city to repair."

Where the evidence is undisputed, its sufficiency to authorize the jury in finding a defendant guilty of negligence is exclusively for the court. Bohl v. City of Dell Rapids, 15 S. D. 619, 91 N. W. 315. As the effect of such a charge would be to take the case from the jury, its refusal was justified, unless, as a matter of law, appellant was entitled to have a verdict directed in its favor. Cases of this character should be submitted to the jury, provided there is not an entire failure of proof

as to some essential issue, or the uncontroverted facts and circumstances are susceptible of but one reasonable construction. The fact that so many of the witnesses were entirely familiar with and frequently traveled over the walk in question without observing the broken plank or remembering that they had noticed it, until their special attention was directed thereto long after the accident had occurred, is sufficient, when considered with other facts and circumstances, to justify the inference that the defect was slight, and insufficient to suggest danger to a person of ordinary prudence. A municipal corporation is not an insurer of the pedestrian against all injuries that may be sustained while traveling upon its sidewalks, and the exercise of reasonable diligence is sufficient to discharge every obligation imposed by law. While the walk in question had been quite extensively used for several years, it had been recently repaired, so that its general condition at the time of the accident was not such as to afford reasonable cause for apprehension that pedestrians would be injured thereon. No claim is made that the city had actual notice that the plank had been broken at the end, and the undisputed evidence tends to show that the defect thus occasioned was not discoverable from mere observation.

In a Michigan case the trial court instructed the jury "that it was the duty of the municipality to make such an inspection of sidewalks as would disclose latent defects, if they existed," and on appeal the point was disposed of as follows: "Respecting the ordinary sidewalks, there is no such duty of substructure inspection as is imposed in case of bridges or other elevated ways. In the absence of actual notice, municipalities are only liable for such defects in sidewalks as are apparent, or

are suggested by appearances, or which are disclosed by a test in the nature of the ordinary use of such walks." Hembling v. Grand Rapids, 99 Mich. 292, 58 N. W. 310.

In Pennsylvania the court say: "A municipality is not obliged to seek for defects, but it must be vigilant to observe them when they become observable to an officer exercising a reasonable supervision." Duncan v. Philadelphia, 173 Pa. 550, 34 Atl. 235, 51 Am. St. Rep. 780.

The headnote, fully supported by the opinion in Cooper v. City· of Milwaukee, 97 Wis. 458, 72 N. W. 1130, is as follows: "In order to charge the city with liability for an injury caused by the defective condition of a sidewalk or the cover of a coal hole therein, it must have had either·actual or constructive notice thereof or the defect must have been of such a character or of so long standing that the city officers, in the exercise of ordinary care, must be presumed to have known it."

In Bohl v. City of Dell Rapids, supra, this court is committed to the doctrine that: "A municipal corporation is not liable for every accident that may occur within its limits. Its officers are not required to do every possible thing that human energy and ingenuity can do to prevent the happenings of accidents or injuries to the citizens. The law does not require that the city shall do more than keep its streets and sidewalks in a reasonably safe condition. The obstructions or defects in the sidewalks, to make the corporation liable, must be such as are in themselves so dangerous that a person exercising ordinary prudence could not avoid injury in passing them."

In a case where it was undisputed that the city authorities had knowingly permitted a depression 2½ inches deep, 7 inches wide, and 2 feet 6 inches in length to remain in the center of a

flag sidewalk 8 feet wide for a period of 4 years prior to the time when plaintiff stepped into such depression and was seriously injured, it was held by the New York Court of Appeals that defendant was entitled to a directed verdict, and, in reversing the judgment appealed from, the court say:   "There are very few, if any, streets or highways that are or can be kept so absolutely safe and perfect as to preclude the possibility of accidents, and whether in any case the municipality has done its duty must be determined by the situation, and what men knew about it before, and not after, an accident.   When the defect is of such a character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but when, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law.   Assuming that the defendant's officers were men of reasonable prudence and judgment, could they, in the exercise of these qualities, have anticipated this accident or a similar one from the existence of this depression in the walk?   They could have undoubtedly have repaired it at very little expense, but the omission to do so does not show or tend to show that they were negligent, unless the defect was of such a character that a reasonably prudent man would anticipate some danger to travelers on the walk, if not repaired.   If the existence of such a defect is to be deemed evidence of negligence on the part of the city, then there is scarcely any street in any city that is

reasonably safe within the rule, and, when accidents occur, the municipality must be treated practically as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfilment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence." Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401. The view above expressed is fully sustained by the following authorities cited in the opinion: Hubbell v. Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522; Hunt v. Mayer, etc., 109 N. Y. 134, 16 N. E. 320; Goodfellow v. Mayer, etc., 100 N. Y. 15, 2 N. E. 462; Clapper v. Town of Waterford, 131 N. Y. 382, 30 N. E. 240; Craighead v. Brooklyn City R. R. Co., 123 N. Y. 391, 25 N. E. 387; Lane v. Town of Hancock, 142 N. Y. 510, 37 N. E. 473.

Viewed in the light most favorable to respondent, the evidence is insufficient to charge the municipal authorities with negligence in the performance of an official duty, and the motion for a directed verdict at the close of all the evidence should have been granted.

The judgment appealed from is reversed, and a new trial ordered.