ROBINSON, Appellant, v. MINNEHAHA COUNTY,
Respondent.

(277 N. W. 324)

(File No. 8036.   Opinion filed January 25, 1938)

*Will G. Robinson,* of Pierre, and *Harry A. Robinson,* of Yankton, for Appellant.

*E. D. Barron,* State's Atty., *C. J. Delbridge, Louis Crill,* and *John McQuillen,* all of Sioux Falls, for Respondent.

SMITH, J. On the night of August 31, 1933, a large tree located within the confines of a state trunk highway in Minnehaha County fell across the highway and injured the wife of plaintiff. The tree had become weakened by decay, and was precipitated onto the passageway by a high wind. As a result of the injuries suffered by his wife, appellant was required to expend, or obligate himself to expend, a considerable sum of money. After his claim against Minnehaha County had been rejected, this action was brought by appellant for the purpose of establishing the liability of the county for such expenditures. A verdict was directed by the learned trial court for the county, at the close of the testimony. The appeal is from the judgment and from an order overruling the motion for a new trial.

Assuming that the evidence discloses that Minnehaha County had actual notice of the defective condition of the tree and had ample opportunity to remove it from the highway, if it was obligated so to do, is the county liable for the damages appellant suffered as a result of the injury? That there is no common-law liability upon the part of the county for such damages has been settled by former adjudications of this court. Bailey v. Lawrence County, 5 S. D. 393, 59 N. W. 219, 49 Am. St. Rep. 881; Brown

v. Roberts County, 49 S. D. 173, 206 N. W. 479; Hanigan v. Minnehaha County et al., 47 S. D. 606, 201 N. W. 522; Cain v. Meade County, 54 S. D. 540, 223 N. W. 734, 735.

Notwithstanding the fact that the statutory duty to maintain and repair the highway in question rested with the State Highway Commission by the terms of chapter 285 of the Laws of 1923, it is asserted by appellant that county liability arises out of the provisions of sections 8589 and 8590 of the Revised Code of 1919, as amended by chapter 167 of the Session Laws of 1931, reading as follows:

"Section 8589. Guards Erected—Repairs. It shall be the duty of the governing body of every city, incorporated town and of the board of county commissioners in the territory not included in any such city or town, to keep the public highways, culverts and bridges in such condition as to render them safe, passable and free from danger of accident or injury to persons or property while in the lawful use thereof, and in case any highway, culvert or bridge shall become, in whole or in part, destroyed or out of repair by reason of floods, fires or other cause to such extent as to endanger the safety of the public, it shall be the duty of such governing body or board, upon receiving notice thereof, to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width and strength to warn and guard the public from accident or injury, and to repair the same within a reasonable time thereafter. It shall also be the duty of such governing body or board to guard any abandoned public highway, culvert or bridge as provided in this article."

"Section 8590. Violation—Penalty—Damages. Any officer who shall violate the provisions of the preceding section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than ten nor more than fifty dollars or by imprisonment in the county jail not less than five nor more than ten days, or by both such fine and imprisonment; and any person who shall sustain injury to person or property by reason of any violation of such section shall have a cause of action against the city, town, or county, as the case may be."

Authority has taken the position that such statutes deal only with the surface of the passageway, and, being in derogation of the common law, may not be extended by judicial construction to impose liability for falling trees or branches. Miller v. City of Detroit, 156 Mich. 630, 121 N. W. 490, 132 Am. St. Rep. 537, 16 Ann. Cas. 832. The views we hold render it unnecessary for us to labor the point. For like reasons we do not consider whether a cause of action accrues to a husband for expenditures growing out of an injury to his wife under the language of these provisions, reading as follows: "And any person who shall sustain injury to person or property."

■ An understanding of legislative intent will be gained through consideration of the original form of these statutes and by an explanation of the state of our highway law at the time of their enactment. Under the statutes as they then existed, the duty to maintain and repair the highways rested upon cities, towns, and organized civil townships, respectively, as to all highways located within their confines, and upon the counties as to all highways located in territories not fully organized into civil townships. In the light of this segregation of duty, the Legislature adopted chapter 210 of the Session Laws of 1915 (the source of sections 8589 and 8590, Revised Code of 1919), reading as follows:

"§ 1. Guards Erected—Repairs Made. It shall be the duty of the road supervisors of any township, town or city, and the county commissioners of any county not fully organized into civil townships, to keep all public roads and highways, culverts and bridges in such condition as to render them safe and passable and free from danger of accidents or injury to persons or property, while in the lawful use thereof, and in case such roads, highways, culverts or bridges shall become in whole or in part destroyed or out of repair by reason of floods, fires or any other cause, to such an extent as to endanger the safety of public travel, it shall be their duty upon receiving notice thereof to cause to be erected, for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defects, or across such roads or highways, of sufficient height, width and strength to warn and guard the public from accident or injury to the person or property thereof, and it shall also be their duty to repair the same

within reasonable time thereafter. It shall also be the duty of any such supervisors to protect any abandoned public road or highway with substantial guards as provided in this act.

"§ 2. Penalty. Any such officer or officers, who shall violate the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than ten ($10.00) dollars, nor more than fifty ($50.00) dollars, or by imprisonment in the county jail for a term of not less than five (5.) days, nor more than ten (10) days, or both such fine and imprisonment.

"§ 3. Damages. Any person shall have a cause of action against such city, town, township or county for injury to persons or property sustained by reason of any violation of the provisions of this act."

From these provisions there emerges an unmistakable legislative intent to definitely fix the respective duties of the several subdivisions enumerated with reference to public safety and travel on the highways, and to provide for the recovery of damages from a particular subdivision occasioning injury through failure to perform the statutory duty assigned to it. Manifestly, liability was only intended to attach to a subdivision because of its negligence.

That such was the legislative intent portrayed by these provisions was recognized by this court in the case of Hanigan v. Minnehaha County, supra. In that case damages were sought against a township, under sections 8589 and 8590 of the Revised Code of 1919, for injuries sustained on the county highway system within the township at a time after the Legislature, by chapter 333 of the Laws of 1919, had relieved the townships of all responsibility for the maintenance and repair of those particular highways. In that case it was said: "A civil township no longer has any power or duty in respect to the construction or maintenance of any part of the county highway system within its borders, and section 29 of said chapter 333 purports to place upon the county board the duty of constructing and maintaining all bridges in the county except those on the state trunk highway system. It is therefore perfectly clear that said section 8590 no longer has any application to townships in respect to an injury arising from defective maintenance of the county highway system."

By chapter 285 of the Laws of 1923, the Legislature relieved the counties of the state of all duty to maintain and repair the state trunk highway system. Thereafter, in the case of Cain v. Meade County, supra, this court was required to pass upon the liability of a county for damages growing out of injuries on the trunk highway system, under section 61 of chapter 333 of the Laws of 1919, which reads as follows: "Section 61. Claims for damages which may be due to the insufficiency or lack of repair of the Trunk Highway System shall be against the county, except that when any town, city or village, or public service corporation, shall, in their construction or maintenance of a public utility or other public service property, or of a road or street, have made a portion of the Trunk Highway System unsafe or dangerous for public travel, the town, village or city, or public service corporation responsible shall be liable for and shall defend such claims for damages."

In that case it was said: "But the effect of section 61 at the time of its enactment was to allow a recovery for the negligence of the county officers in the maintenance of such highways. To apply section 61 after the amendment would be to bind the county, not for the negligent acts of its officers but for the negligent acts of the state officers, over which it has no control. Negligence is the gist of the cause of action. Now no duty to repair is imposed by statute upon the county; therefore no neglect of such duty can rightly be charged to the county. Such negligence, if any, is chargeable to the state and state officers. The section was evidently passed to give a right of action against the county for negligence. There is nothing to indicate that it was ever intended to give a right of action against the county for the negligence of the state. We are not disposed to hold that it has any such application."

After the Legislature, by chapter 167 of the Laws of 1931, imposed a duty upon the county for the maintenance of the county highway system, this court affirmed a judgment fixing the liability of the county for damages occasioned through its negligence in the performance of its duty to repair the county highway system, in the case of Clementson v. Union County, 63 S. D. 104, 256 N. W. 794.

That this court is committed to the conclusion that the Legis-

lature has not intended to charge any subdivision with liability for damages for injuries on the highways unless it is charged with the duty to maintain and repair such highway, and has been derelict in the performance of that duty, is thus established beyond question.

We are of the further view that the sections under consideration indicate that the Legislature intended that the whole duty with respect to public safety on any particular highway should rest on the agency or subdivision having the duty to maintain and repair such highway. Under section 8589, the duty to repair follows from discovery of dangers. It would be unreasonable to conclude that the Legislature intended to invite inefficiency through a division of responsibility for repairs.

We therefore hold that chapter 285 of the Laws of 1923 not only relieved the counties of this state from the duty to maintain and repair the state highway trunk system, but that it also relieved them of all duty to safeguard public travel on such system. It follows that the county is not liable to appellant under sections 8589 and 8590 of the Revised Code of 1919.

Under the allegations of his complaint, and based upon certain evidence adduced, appellant next urges that the county is liable for his damages under section 61 of chapter 333 of the Laws of 1919, supra. This contention is predicated upon the holding of this court in the case of Cain v. Meade County, supra. In that case, which arose on demurrer, it was alleged that pursuant to chapter 285 of the Laws of 1923 (permitting the State Highway Commission to cause work of repair and maintenance to be done by the county under contract or agreement between the commission and the county) that Meade county had agreed to maintain and repair all of the state highways in that county. In sustaining an order overruling a demurrer, this court said:

"The county having, under the terms of the contract, entered upon and acted thereunder, with full control of the maintenance and repair of the state trunk highways within the county, was charged with the same degree of care in doing so as was imposed upon the state. When the county by contract assumed the duty of maintaining and repairing such highways, by that act it assumed a duty to the public as well as the contract duty.

"[4] Is the county, then, liable in tort for negligence in performing that duty? We think it is. If, as a contractor, it does not act in a sovereign function, it is liable under common-law principles as an independent contractor. If, although the duty is imposed by contract and not by statute, it is still acting in a sovereign function, requiring a waiver of immunity before it can be held, then said section 61 of chapter 333, Laws of 1919, waives that immunity. We do not think it necessary to decide whether the county, as a contractor, acts in a sovereign function or not. In either role the county is liable, in one because immunity is waived, in the other on common-law principles, as an independent contractor without immunity."

Under the doctrine invoked, liability to a third party arises because the contract places the defendant in full control. In Cain v. Meade County, supra, the following language from Burdick's Law of Torts, 4th Ed., p. 196, was quoted with approval: "Undoubtedly, when the servant or agent owes no legal duty to a third person, such person cannot make out a cause of action in tort against him, by showing that his neglect to perform a duty, owing to the master, has been followed by injury to himself, and third person. If the master owed such person a duty, his neglect to perform it would render him answerable for injury caused thereby; and such liability is all that the injured party needs or can claim. But when the servant or agent has assumed a duty to third persons, as well as to his master or principal, as when he has taken full possession of his master's or principal's property, and has agreed to keep it in repair, or to do other acts upon or about it, whose performance is necessary to the safety of third persons, it would seem that he should respond in damages to third persons who are injured by its nonperformance. This view is sustained by the weight of modern authority."

The principal involved is stated in the Restatement of the Law of Torts of the American Law Institute in section 387, as follows: "An independent contractor or servant to whom the owner or possessor of land turns over the entire charge thereof is subject to the same liability for harm caused to others within or outside the land by his failure to exercise reasonable care to maintain the land in safe repair as though he were the possessor of the land."

And the following language appears in the comment thereunder: "In order to create liability under the rule stated in this Section it is not necessary that the contractor be given the possession or occupation of the land or building. On the other hand, the contractor must have taken over the entire charge of the land or building. It is not enough to create liability under the rule stated in this Section that he has undertaken to make specific repairs or even to inspect the land or building and from time to time make such repairs as he should discover to be necessary."

As additional statutory background dealing with this theory of liability, the briefs direct our attention to chapter 284 of the Laws of 1923, authorizing or empowering the counties to co-operate with the Highway Commission in construction and maintenance of the state trunk highway system.

The parties stipulated that the commission and the county had not entered into a written contract. However, appellant contends that the evidence is sufficient to establish an agreement between the county and the commission under which the county was doing maintenance and repair work. We are persuaded that appellant is correct in this contention. In our opinion, the evidence is undoubtedly sufficient to sustain a finding that the county was performing work on this highway pursuant to an understanding or an agreement with the highway commission. The most favorable view that may be taken of the evidence, however, discloses no more than a course of conduct by the county including patching of the surface of the pavement, repairing grade shoulders, and cutting weeds along the highway, all solely pursuant to general and specific instructions of the district engineer of the Highway Commission, the making of very minor emergency repairs without such instructions, expressing opinions as to the proper placement of bridge reflectors and the quantity of snow fence required in response to specific inquiries from the Highway Commission, and instructions by the county commissioner for the removal of the particular tree from the highway after it had fallen. In view of the fact that chapter 284 and chapter 285, both of the Session Laws of 1923, contemplate contracts or agreements between the Highway Commission and any particular county covering all or any part of the maintenance and repair of the state trunk highway

system, whatever tendency these facts standing alone may have to raise an inference of full control of the highway by the county is utterly destroyed by the uncontroverted testimony that the district engineer was making inspections of the state trunk highway about every ten days or two weeks, and was continually giving specific and general instructions dealing with its maintenance and repair. We are firmly convinced that the evidence will not support a finding that Minnehaha County had, through agreement, assumed full control of the maintenance and repair of the highway in question. At most the evidence does but support an inference that the county had undertaken specific tasks to be performed in response to either general or particular instructions from the district engineer of the Highway Commission. It follows that we are of the opinion that the evidence was insufficient to establish a duty on the part of the county to remove the defective tree in question. Being charged with no duty in the premises, the county was not negligent, and is therefore not liable for plaintiff's damages.

The judgment and order of the trial court are affirmed.

All the Judges concur.