ZINTER, Justice.
[¶ 1.] This case arises out of a one-car accident in a city park in Rapid City, South Dakota (the City). Adam Hohm (Adam) was severely injured when the car in which he was a passenger skidded off a street in the park and landed upside down in a nearby canal. Adam’s parents, Dean and Jean Hohm (Hohms), acting as Adam’s guardians and conservators, brought suit against the City alleging breach of various duties relating to streets. The City filed a series of motions to dismiss on the basis that it owed no duty to Adam. All of the City’s motions were denied and a jury entered a verdict for Hohms. The City appeals. Although we conclude that cities no longer owe the common-law duty applied by the circuit court, we apply our ruling prospectively and affirm the judgment.
FACTS AND PROCEDURAL HISTORY
[¶ 2.] Between nine and ten p.m. on December 27, 2000, sixteen-year-old Char-issa Hitchcock (Charissa) was driving her car on a slippery, snow-covered street through Canyon Lake Park in Rapid City. Adam, also age sixteen, was riding as a passenger in the car along with another teenage passenger. As Charissa drove through the park, she came to a sharp curve in the road and lost control of her vehicle. The car skidded off the street and landed upside down in a nearby canal. Charissa and the other passenger were quickly rescued from the vehicle, but Adam was trapped underwater in the car and was deprived of oxygen for a period of time. Adam suffered severe brain damage as a result of the accident.
[¶ 3.] Hohms sued the City claiming violation of duties regarding the construction and maintenance of streets, the erection of guards, and the posting of signs warning of known dangers. The City moved for summary judgment, directed verdict, JNOV, and a new trial, all on the basis that it owed no duty to Adam. The City’s motions were denied and, after a jury trial, a verdict was entered in favor of Hohms. The City appeals claiming that *898 the trial court erred in denying its motions because it owed no duty to Adam. The existence of a duty in a negligence action is a question of law subject to de novo review by this Court. State Auto Ins. Companies v. B.N.C., 2005 SD 89, ¶20, 702 N.W.2d 379, 386.
DECISION
[¶ 4.] One of the elements of a negligence claim is a duty on the part of the defendant. Id. The trial court concluded that the City owed Adam common-law duties to construct and maintain its streets in a reasonably safe manner and to erect guards or other barriers against dangerous conditions. The trial court further concluded that the City had a statutory duty under SDCL 31-28-6[1] to erect signs warning of known dangers. The City first argues that any common-law duties it may have owed were extinguished in 1915 and 1939 by the enactment of statutes regulating the duty of cities, towns, counties, and townships regarding the construction and maintenance of streets and highways. This argument requires analysis of the development of the law of county, township, and municipal liability for negligence relating to streets and highways.
[¶ 5.] The duties of counties and municipalities as to highways[2] were first addressed by this Court in Bailey v. Lawrence County, 5 S.D. 393, 59 N.W. 219 (1894), a case involving damages caused by a defective bridge constructed by a county. The Court held in Bailey that, while municipalities were liable at common law for injuries resulting from defects in highways, counties were not liable in such cases in the absence of legislation making them liable. In explaining this difference, the Court drew the following distinction between counties and municipalities:
The ground upon which it is held that counties are not liable for damages in actions of this character is that they are involuntary political divisions of the state, created for governmental purposes, and are organized without regard to the consent or dissent of the inhabitants; and the theory upon which municipal corporations, proper, are held liable in such cases, is that they are voluntary associations created and organized at the solicitation of, and with the free consent of, the inhabitants, under the laws of the state, and that the benefits accruing to the people by such incorporation compensate them for the liability.
Id. at 399, 59 N.W. at 221 (emphasis added).
[¶ 6.] The Court based this distinction on principles of sovereign immunity that, in the common law, protected counties and townships, as political divisions of the State, from liability for neglect of duties regarding highways unless an action was expressly authorized by statute. See id. (citing Barnett v. Contra Costa Co., 67 Cal. *899 77, 7 P. 177 (1885)). The Court continued to utilize principles of sovereign immunity as a basis for distinguishing between common-law municipal liability and county and township liability in a number of subsequent cases. See Norberg v. Hagna, 46 S.D. 568, 572-78, 195 N.W. 438, 440 (1923)(municipal corporations are liable for damages caused by negligence when their duties are ministerial and are liable for negligence in permitting obstructions or defects in streets and highways); Jensen v. Juul, 66 S.D. 1, 5, 278 N.W. 6, 8 (1938)(counties, townships and school districts classified as quasi public corporations are instrumentalities of the State for the purpose of carrying into effect the functions of government and are not liable for damages caused by negligent performance of such duties unless a cause of action is expressly given by statute); Williams v. Wessington Tp., 70 S.D. 75, 77, 14 N.W.2d 493, 494 (1944)(counties and townships are political subdivisions of the State or quasi corporations exercising part of the State’s sovereign power and are not hable in the absence of a statute imposing liability for injuries caused by defective highways, while municipalities are liable for failure to use due care to keep streets in reasonably safe condition for public travel); Conway v. Humbert, 82 S.D. 317, 319, 145 N.W.2d 524, 526 (1966)(a municipal corporation has both governmental and corporate, private or proprietary powers and, when using governmental powers, it is not liable for tort because it is an agent of the State partaking of its sovereignty, yet it is liable for negligence when exercising its corporate or private powers); Bucholz v. City of Sioux Falls, 77 S.D. 322, 328, 91 N.W.2d 606, 610 (1958)(a municipality engaged in construction, repair or maintenance of streets and sidewalks acts in a corporate or proprietary capacity and is hable for injuries resulting from the negligence of its officers and agents).[3]
[¶ 7.] Consistent with the holdings distinguishing county and municipal liability, this Court handed down a long line of decisions recognizing a common-law duty on the part of municipalities to keep, repair or maintain streets and sidewalks in a reasonably safe condition for public travel. See Bohl v. City of Dell Rapids, 15 S.D. 619, 91 N.W. 315 (1902); Jones v. City of Sioux Falls, 18 S.D. 477, 101 N.W. 43 (1904); Fritz v. City of Watertown, 21 S.D. 280, 111 N.W. 630 (1907); Smith v. City of Yankton, 23 S.D. 352, 121 N.W. 848 (1909); Connell v. City of Canton, 24 S.D. 572, 124 N.W. 839 (1910); Rowe v. Richards, 32 S.D. 66, 142 N.W. 664 (1913), overruled on other grounds, Ulvig v. McKennan Hospital, 56 S.D. 509, 229 N.W. 383 (1930); Keen v. City of Mitchell, 37 S.D. 247, 157 N.W. 1049 (1916); Gellenbeck v. City of Mobridge, 40 S.D. 157, 166 N.W. 631 (1918); Ellwein v. Town of Roscoe, 42 S.D. 298, 174 N.W. 748 (1919); Stewart v. City of Watertown, 43 S.D. 489, 180 N.W. 945 (1921); Schuler v. City of Mobridge, 44 S.D. 488, 184 N.W. 281 (1921); Norberg, supra; Doolin v. City of Winner, 48 S.D. 400, 204 N.W. 899 (1925); Usletten v. City of Brookings, 59 S.D. 477, 240 N.W. 851 (1932); Drake v. City of Mobridge, 60 S.D. *900 79, 243 N.W. 429 (1932); Hermandson v. City of Canton, 60 S.D. 367, 244 N.W. 525 (1932); Fenton v. Ackerman, 66 S.D. 465, 285 N.W. 516 (1939); Williams, supra; Kimball v. City of Sioux Falls, 71 S.D. 35, 20 N.W.2d 873 (1945); McCleod v. TriState Milling Co., 71 S.D. 362, 24 N.W.2d 485 (1946); Gurney v. Rapid City, 74 S.D. 194, 50 N.W.2d 360 (1951); Poppen v. City of Watertown, 74 S.D. 402, 53 N.W.2d 616 (1952); Bucholz, supra; Rapid City v. First Nat’l Bank of Black Hills, 79 S.D. 38,107 N.W.2d 693 (1961).[4]
[¶ 8.] In contrast with the common-law duty of municipalities, the Court held that county and township duties as to highway maintenance were statutory. For example, in the early case of Hanigan v. Minnehaha County, 47 S.D. 606, 609, 201 N.W. 522, 523 (1924), this Court observed as to county liability that:
Prior to the adoption of chapter 210, Laws 1915, which chapter was the original source of said sections 8589 and 8590, it was the settled law of this jurisdiction, following the rule of the common law, that a county was not liable for damages caused by the neglect of its officers to keep in repair a bridge upon a public highway because there was no express statute creating such a liability. That doctrine was enunciated in [Bailey, supra.]
See also Williams, supra (stating, before 1915, there was no statute imposing liability on townships-which are generally treated the same as counties-but, by chapter 210, Laws 1915, townships (and counties) were made liable under certain circumstances for injuries sustained because of defects in highways).
[¶ 9.] This 1915 act, referenced in Han-igan, supra and Williams, supra, was the first legislation imposing liability for negligence in highway maintenance. It explicitly applied not only to townships and counties, but also to towns and cities and broadly provided:
§ 1. Guards Erected — Repairs made. It shall be the duty of the road supervisors of any township, town or city, and the county commissioners of any county not fully organized into civil townships, to keep all public roads and highways, culverts and bridges in such condition as to render them safe and passable and free from danger of accidents or injury to persons or property, while in the lawful use thereof, and in case such roads, highways, culverts or bridges shall become in whole or in part destroyed or out of repair by reason of floods, fires or any other cause, to such an extent as to endanger the safety of public travel, it shall be their duty upon receiving notice thereof to cause to be erected, for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defects, or across such roads or highways, of sufficient height, width and strength to warn and guard the public from accident or injury to the person or property thereof, and it shall also be their duty to repair the same within a reasonable time thereafter. It shall also be the duty of any such supervisors to protect any abandoned public road or highway with substantial guards as provided in this act. § 2. Penalty. Any such officer or officers, who shall violate the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by *901 a fine of not less than ten ($10.00) dollars, nor more than fifty ($50.00) dollars, or by imprisonment in the county jail for a term of not less than five (5) days, nor more than ten (10) days, or both such fine and imprisonment.
§ 3. Damages. Any person shall have a cause of action against such city, town, township or county for injury to persons or property sustained by reason of any violation of the provisions of this act. § 4. All acts and parts of acts in conflict with this act are hereby repealed.
1915 S.D.Sess.L. ch. 210 (emphasis added).
[¶ 10.] The 1915 legislation went through various changes and modifications over the following years. It was first amended and codified at sections 8589 and 8590 of the Revised Code of 1919. Those sections retained the references to counties, townships, cities and towns and further retained broad duties relating to highways:
§ 8589. Guards Erected-Repairs. It shall be the duty of the governing body of every city, incorporated town and organized civil toumship, and of the board of county commissioners in territory not included in any such city, town or township, to keep the public highways, culverts and bridges in such condition as to render them safe, passable and free from danger of accident or injury to persons or property while in the lawful use thereof; and in case any highway, culvert or bridge shall become, in whole or in part, destroyed or out of repair by reason of floods, fires or other cause to such an extent as to endanger the safety of public travel, it shall be the duty of such governing body or board, upon receiving notice thereof, to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width and strength to warn and guard the public from accident or injury, and to repair the same within a reasonable time thereafter. It shall also be the duty of such governing body or board to guard any abandoned public highway, culvert or bridge as provided in this article.
§ 8590. Violation-Penalty-Damages. Any officer who shall violate the provisions of the preceding section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than ten nor more than fifty dollars or by imprisonment in the county jail not less than five nor more than ten days, or by both such fine and imprisonment; and any person who shall sustain injury to person or property by reason of any violation of such section shall have a cause of action against the city, town, township or county as the case may be.
SD Rev Code 1919, § 8589, § 8590 (emphasis added).
[¶ 11.] In 1939, these two sections of the Revised Code of 1919 were replaced by SDC § 28.0913. That act retained the reference to counties, townships, cities and towns, but limited those entities’ duties as follows:
In case any highway, culvert, or bridge shall become in whole or in part destroyed or out of repair by reason of floods, fires, or other cause to such an extent as to endanger the safety of public travel, it shall be the duty of the governing body or board under statutory duty to maintain such highway, culvert, or bridge upon receiving notice thereof to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width, and strength to guard the public *902 from accident or injury and to repair the same within a reasonable time thereafter. It shall also be the duty of such governing body or board to guard any abandoned public highway, culvert, or bridge in like manner.
Any person who shall sustain injury to person or property by reason of any violation of this section shall have a cause of action against the county, township, city, or town as the case may be for such damages as he may have sustained.
1939 SDC § 28.0913 (emphasis added).
[¶ 12.] The 1939 statutory changes were significant in two respects. First, they removed the broad duty imposed by § 8589 to keep public highways safe and free from danger, retaining only the limited duty to guard and repair highways that were destroyed or out of repair. See Reaney v. Union County, 69 S.D. 392, 395, 10 N.W.2d 762, 763 (1943). In Reaney, the county argued that these changes indicated an intention to narrow the scope of its liability for negligence in highway maintenance. This Court agreed holding: “The broad general duty to maintain a reasonably safe highway has been eliminated, and the specific duty to guard and repair a damaged or destroyed highway has been retained.... The conclusion is unavoidable that the liability of the county has been abridged by revision.” Id. at 396-97, 10 N.W.2d at 764. This conclusion was reaffirmed in Dohrman v. Lawrence County, 82 S.D. 207, 210, 143 N.W.2d 865, 867 (1966)(stating that in adopting the 1939 revision, the legislature curtailed the statutory duty to render highways safe and it is now established that a county’s obligation is confined to the specific duty to guard and repair a damaged or destroyed highway). To the extent these statutes were inconsistent with the common law, the common law was abrogated. This Court stated such revisions:
[I]mpliedly eliminated common law negligence in keeping and maintaining county roads as the base for a cause of action against [a] County. If in the spirit of so-called enlightened public policy changes in the governing statute are again deemed appropriate, we believe the legislature will be cognizant of the need and will not remain insensitive to its responsibility.
Id. at 212,143 N.W.2d at 868.
[¶ 13.] The development of these statutes abrogating the common law and imposing statutory liability for negligence in highway maintenance is also important because, as emphasized in the text of all statutes quoted above, the change applied not only to counties and townships, but also to cities and towns, a point not previously recognized in our jurisprudence. Relying on both changes, the City argues that the legislative inclusion of cities and towns in the statutes abrogated its common-law duties as to highway maintenance and subjected it to the new, limited statutory liability identical to that of counties and townships; i.e., that the narrowing of statutory duties in 1939, as recognized in Reaney, supra and Dohrman, supra, also applied to municipalities. If applicable to municipalities, the current successor to 1939 SDC § 28.0913, SDCL 31-32-10, limits liability like the 1939 legislation as follows:
If any highway, culvert, or bridge is damaged by flood, fire or other cause, to the extent that it endangers the safety of public travel, the governing body responsible for the maintenance of such highway, culvert, or bridge, shall within forty-eight hours of receiving notice of such danger, erect guards over such defect or across such highway of sufficient height, width, and strength to guard the *903 public from accident or injury and shall repair the damage or provide an alternative means of crossing within a reasonable time after receiving notice of the danger. The governing body shall erect a similar guard across any abandoned public highway, culvert, or bridge. Any officer who violates any of the provisions of this section commits a petty offense.
SDCL 31-32-10. Thus, the City contends that under the 1915, 1939, and current version of these statutes, its common-law duty was abrogated and its statutory duty is the same as counties and townships. The City further contends that, under SDCL 31-32-10 and the facts of this case, it owed no duty at all because the Rapid City street was not “damaged” or “abandoned” as required by that statute: rather, allegedly the street was defectively constructed, maintained, or lacked adequate warnings.
[¶ 14.] These contentions require us to address the effect of changes in statutes on the common law. There is no question that the common-law doctrine as set forth in Bailey predates any relevant statutory enactments on duties of a municipality concerning streets. The test for whether a statute overrides a previously recognized common-law doctrine was established in our first Territorial Code of 1877:
The evidence of the common law, including the law merchant, is found in the decisions of the tribunals.
In this state the rules of the common law, including the rules of the law merchant, are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in § 1-1-23.
SDCL 1-1-24 (originally Rev.Code Terr. Dak, Civil Code §§ 5 & 6 (1877)). One of the methods of expressing the “will of the sovereign power” in SDCL 1-1-23 (originally Rev.Code Terr.Dak, Civil Code § 3 (1877)) to override the common law is “[b]y statutes enacted by the Legislature])]” Thus, in case of a conflict, the statute controls.
[¶ 15.] These principles have been reflected in the decisions of this Court.
As a general precept, common law is in force, except where it conflicts with the will of the sovereign power as expressed through the constitution, statutory enactments, and ordinances. SDCL 1-1-23, 1-1-24. See also McKellips v. Mackintosh, 475 N.W.2d 926, 929 (S.D. 1991). Where a statute is in derogation of common law, it should be “liberally construed with a view to effect its objects and to promote justice.” SDCL 2-14-12.
State v. Shadbolt, 1999 SD 15, ¶ 13, 590 N.W.2d 231, 233. In Burnett v. Myers, 42 S.D. 233, 173 N.W. 730 (1919), this Court considered whether a common-law cause of action remained in force despite the enactment of a statutory-based remedy. In holding that an analogous common-law cause of action for trespassing livestock did not survive, this Court adopted the following principles:
“When a statute revises the whole subject of a former one and is clearly designed as a substitute, the former law is repealed, although no express terms to that effect are used. Hillsborough County v. Manchester, 49 N.H. 57, 60; Opinion of Justices, 66 N.H. 629, 668-671, 33 A. 1076. ‘The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the Legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is *904 embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory.’ Roche v. Jersey City, 40 N.J.L. 257, 262. The rule is the same when the common law is revised by statute. State v. Wilson, 43 N.H. 415, 419, 82 AmDec 163; State v. Morgan, 59 N.H. 322, 324.”
Id. at 234, 173 N.W. at 731 (emphasis added)(quoting Boston Ice Co. v. Boston & M.R.R., 77 N.H. 6, 86 A. 356, 360 (N.H. 1913)). The Court’s analysis in Burnett is instructive here:
It is true that so far as the substance of the right declared in said chapter [244, Laws of 1907,] is concerned, it is merely declaratory of the common law. But chapter 244 goes further than to merely restate the common-law right; it prescribes the method of procedure to secure the remedy; it assumes to cover the whole subject-matter of damages caused by trespassing animals, including the rules of practice to be followed in such cases. It is clear from the degree of minuteness with which the Legislature went into the whole subject, that the remedy provided was intended to be exclusive, and that it was the intent of the Legislature to repeal any existing provisions of that act.
Id. at 234-35, 173 N.W. at 731 (citations omitted).
[¶ 16.] Applying these principles to the original 1915 legislation on liability for negligence in highway maintenance, we observe that chapter 210 imposed duties on the road supervisors of “any township, town or city,” and on county commissioners to keep highways safe, passable and free from danger; to erect guards over substantial defects; and to complete repairs when such highways were destroyed or fell out of repair. 1915 SDSessL ch 210, § 1 (emphasis added). The act provided criminal penalties for its violation and a civil cause of action for persons injured as a result of noncompliance with its provisions. Id. at §§ 2 & 3. Finally, the act expressly provided that all other acts and parts of acts in conflict with it were repealed. Id. at § 4.
[¶ 17.] Clearly, the detailed provisions of chapter 210 express legislative intent to design a complete scheme of responsibility and liability for highway maintenance such that its requirements should be the only ones that were obligatory. Robinson v. Minnehaha County, 65 S.D. 628, 277 N.W. 324 (1938). Robinson stated:
From [chapter 210] there emerges an unmistakable legislative intent to definitely fix the respective duties of the several subdivisions enumerated with reference to public safety and travel on the highways, and to provide for the recovery of damages from a particular subdivision occasioning injury through failure to perform the statutory duty assigned to it.
Id. at 632, 277 N.W. at 326 (emphasis added).
[¶ 18.] Consequently, chapter 210 did not merely restate the common-law duty of municipalities as to maintenance of streets, it prescribed the new statutory duties for cities, towns, counties and townships, enacted criminal penalties, and created a civil cause of action for violation of those duties. To paraphrase the Court’s conclusion in Burnett, it is clear from the degree of minuteness with which the legislature went into the whole subject, that the act was intended to be exclusive, and that it was the intent of the legislature to repeal any other acts or provisions of common law pertaining to the same subject.
*905 [¶ 19.] Even if we were to determine that some vestige of the common-law liability of municipalities survived the enactment of chapter 210 in 1915, we hold that it was fully abrogated by the 1939 statutory revisions that eliminated the broad duty to maintain reasonably safe highways and confined counties and townships, as well as cities and towns, to the more limited duty to guard and repair highways that are damaged or destroyed.[5] See 1939 SDC § 28.0913; Reaney, 69 S.D. at 396-97, 10 N.W.2d at 764; Dohrman, 82 S.D. at 210, 143 N.W.2d at 867.
[¶ 20.] Based upon this history, cities’ common-law duties respecting streets were abrogated by these legislative enactments. The duties are now limited by statute, and any language in the decisions of this Court after 1939 recognizing a common-law duty on the part of municipalities with regard to streets or highways is hereby overruled. This would include the language regarding a common-law duty in: Williams, 70 S.D. at 77, 14 N.W.2d at 494 (citing Norberg, supra and Jensen, supra for “[t]he general rule ... that cities and towns are liable for injuries sustained in consequence of their failure to use due care to keep their streets in a reasonably safe condition for public travel.”); Kimball, 71 S.D. at 40, 20 N.W.2d at 875 (quoting City of Dallas v. Maxwell, 248 S.W. 667, 670 (Tex.Com.App.1923) for the statement that “ ‘the general rule is that a municipality is charged with the duty of exercising ordinary care to so construct and maintain its public highways as to render them reasonably safe for ordinary travel’”); McCleod, 71 S.D. at 367, 24 N.W.2d at 487 (citing Bohl, supra and other South Dakota cases holding that “[a] municipal corporation is charged with the duty of keeping its streets and sidewalks in a reasonably safe condition.”); Gurney, 74 S.D. at 197, 50 N.W.2d at 361 (citing Keen, supra and other South Dakota cases where this Court applied the rule that it is “[t]he duty of a municipality to keep its streets and sidewalks reasonably safe for the use of the public”); Poppen, 74 S.D. at 404, 53 N.W.2d at 617 (quoting Bohl, 15 S.D. at 624, 91 N.W. at 317, for the rule, “ ‘[t]he law does not require that the city shall do more than keep its streets and sidewalks in a reasonably safe condition’ ”); and Bucholz, 77 S.D. at 329, 91 N.W.2d at 610 (quoting Norberg, 46 S.D. at 573, 195 N.W. at 439, referring to the “ ‘law that requires a municipal corporation to keep its streets free from nuisances, and reasonably safe for those who lawfully use them’ ”).[6] Although we tread reluctantly upon these precedents, as observed by Justice Brandéis in his dissent *906 ing opinion in Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 405-06, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932)(Brandeis, J., dissenting), stare decisis is not an “inexorable command” and is not inflexible. Reconsideration of precedent is appropriate where a shift in position results from intervening development of the law through the growth of judicial doctrine or through further action taken by a legislative body. See Patterson v. McLean Credit Union, 491 U.S. 164, 173, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989). Such is the case here where comprehensive legislation was enacted following this Court’s early decisions recognizing a common-law duty on the part of municipalities and our subsequent decisions regarding municipalities did not discuss the legislation.
[¶ 21.] Hohms argue that any decision overruling these precedents should be applied prospectively only. Generally, unless a court declares otherwise, a decision has both prospective and retroactive effect. Burgard v. Benedictine Living Communities, 2004 SD 58, ¶ 9, 680 N.W.2d 296, 299. Courts, however, have inherent power to apply decisions prospectively only. Id. In determining whether a decision should be given only prospective effect, courts consider the following factors:
First, the decision to be applied nonret-roactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that “we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.” Finally, we have weighed the inequity imposed by retroactive application, for “[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our eases for avoiding the injustice or hardship” by a holding of nonretroactivity.
Id. ¶ 10, 680 N.W.2d at 299 (quoting Brown v. John Morrell & Co., 511 N.W.2d 277, 278 (S.D.1994)(quoting Fisher v. Sears, Roebuck & Co., 88 S.D. 1, 4-5, 214 N.W.2d 85, 87 (1974)(quoting Chevron Oil Co. v. Huson, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971)))).
[¶ 22.] Today’s decision establishes a new principle of law by overruling the above precedents upon which litigants have relied and by deciding an issue of first impression whose resolution was not clearly foreshadowed. While it is suggested that our decisions in Gulbranson v. Flandreau Township, 458 N.W.2d 361 (S.D.1990) and Wilson v. Hogan, 473 N.W.2d 492 (S.D.1991) foretold this decision, we disagree. Neither of those cases addressed the issue in this case, ie., the effect of the statutes regulating liability for negligence in highway maintenance on the common-law liability of municipalities. In discussing a township’s liability in Gulbranson and the State’s waiver of immunity in Wilson, the Court did state that the limited statutory duties remaining under SDCL 31-32-10 apply to “public entities].” See Gulbranson, 458 N.W.2d at 362; Wilson, 473 N.W.2d at 496. Although a “public entity” includes a municipality (see SDCL 3-22-2(12)), we decline to view this choice of terminology as foreshadowing a decision that the liability statutes abrogated the common-law liability of municipalities. The common-law liability of municipalities rested on many years of settled precedent and its abrogation could not be so easily foreseen in the simple turn of a phrase.
*907 [¶ 23.] We also decline to view the existence of the liability statutes themselves as foreshadowing this decision. See Baatz v. Arrow Bar, 426 N.W.2d 298 (S.D.1988); Brown, supra; Burgard, supra (resolution of issue foreshadowed by interpretation of existing statutes/statutory construction does not make new law but interprets existing law). Despite the long-standing existence of those statutes, this Court continued to affirm and reaffirm that municipalities had a common-law duty to maintain their streets in a reasonably safe condition. See Williams, supra; Kimball, supra; McCleod, supra; Gurney, supra; Poppen, supra; Bucholz, supra. The litigants and trial court were well placed in relying on this settled law. In light of those decisions, the liability statutes could not have foreshadowed today’s holding first recognizing the legislative abrogation of the common-law duty. This reliance on settled law also supports prospective application of this decision under the remaining Chevron Oil factors, i.e., the merits and demerits of the case and the inequities imposed by retroactive application. See Burgard, 2004 SD 58, ¶ 12, 680 N.W.2d at 301 (noting that the principal rationale for allowing prospective application is the reliance of the parties on the old rule of law). Based upon the foregoing factors, we hold that this decision is prospective only.
[¶ 24.] Thus, under our prior cases, we conclude that the trial court did not err in determining that the City had a common-law duty to safely maintain its streets. See Williams, 70 S.D. 75, 14 N.W.2d 493; Kimball, 71 S.D. 35, 20 N.W.2d 873 (the cases relied upon by the trial court). Given this conclusion and the fact that a general verdict was entered, we do not address the City’s additional arguments that it owed no duty to properly design, construct and maintain streets or to erect guards under SDCL 31-32-10, and that it owed no duty to warn of known dangers under SDCL 31-28-6. See Eberle v. Siouxland Packing Co., Inc., 266 N.W.2d 256, 258 (S.D.1978) (stating that if a general verdict is rendered and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume the case was decided on the proper theory).
[¶ 25.] Affirmed.
[¶ 26.] GILBERTSON, Chief Justice, concurs.
[¶ 27.] KONENKAMP, Justice, and MILLER, Retired Justice, concur specially.
[¶ 28.] MEIERHENRY, Justice, concurs in result.
[¶ 29.] MILLER, Retired Justice, for SABERS, Justice, disqualified.

. SDCL 31-28-6 provides:
The public board or officer whose duty it is to repair or maintain any public highway shall erect and maintain at points in conformity with standard uniform traffic control practices on each side of any sharp turn, blind crossing, or other point of danger on such highway, except railway crossings marked as required in § 31-28-7, a substantial and conspicuous warning sign, which sign shall be on the right-hand side of the highway approaching such point of danger. A violation of this section is a Class 1 misdemeanor.

. "Highway” is a generic term in South Dakota law defined to include "[ejvery way or place of whatever nature open to the public, as a matter of right, for purposes of vehicular travel[.]” SDCL 31-1-1. "Highways” include city streets. See City of Belle Fourche v. Dittman, 325 N.W.2d 309, 313 (S.D.1982). See also SDCL 31-1-4 ("highways” of the State include streets and alleys within the limits of municipal corporations).

. Over the years, the Court also noted some confusion in its decisions on sovereign immunity as it related to municipalities. See Bu-cholz, 77 S.D. at 326, 91 N.W.2d at 608 (noting that while the distinction between governmental and corporate or proprietary functions is recognized in nearly all jurisdictions in determining the tort liability of municipalities, difficulty often arises in application of the rule and holdings have not been uniform and consistent); Conway, 82 S.D. at 326, 145 N.W.2d at 530 (Homeyer, J., specially concurringXnoting that the decisions of this Court attempting to distinguish between proprietary and governmental functions and predicating liability and nonliability therein are not clear and the distinction in many instances is without logic and confusing).

. As part of the common-law duty to keep streets and sidewalks reasonably safe, some of these cases recognized duties to construct streets and sidewalks so that they were reasonably safe (see Smith, supra), to guard against dangers {see Rowe, supra) and to provide warnings of defects (see Drake, supra).

. The specific language of the 1939 law imposed the duty on “the governing body or board under statutory duty to maintain such highway[.]” 1939 SDC § 28.0913. In 1939, the governing body or board under statutory duty to maintain a city’s streets would have been the governing body or board of the municipality. See 1939 SDC § 45.0201(94)(mu-nicipalities empowered to establish, improve and repair roads, streets, alleys and sidewalks).

. Hohms suggest that if the common-law duty is abrogated, we should also abrogate Orrison v. City of Rapid City, 76 S.D. 145, 74 N.W.2d 489 (1956). Orrison involved a suit against a municipality for negligent maintenance of the floor of a dressing room at a city swimming pool. In setting forth the duty of the city, this Court cited various authorities, including one of its prior decisions on street maintenance, in holding that the city had a duty to maintain the floor in a reasonably safe condition. See id. at 152, 74 N.W.2d at 492 (citing Smith, 23 S.D. 352, 121 N.W. 848). The case before us today is not a swimming pool case, and because the language in Orrison was confined to swimming pools and made no reference to streets, we see no need to overrule it. Similarly, we express no opinion today on a city's common-law duty relating to sidewalks or other non-highway matters.