#29251-a-SRJ
**2022 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JULIE GODBE,
DAVID GODBE,                                       Plaintiffs and Appellants,

    v.

CITY OF RAPID CITY,
SOUTH DAKOTA,                                      Defendant and Appellee,

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MATTHEW M. BROWN
Judge

* * * *

STEVEN C. BEARDSLEY
MICHAEL S. BEARDSLEY of
Beardsley, Jensen & Lee, Prof. LLC
Rapid City, South Dakota                 Attorneys for plaintiffs and
                                         appellants.


ROBERT J. GALBRAITH
JOHN K. NOONEY of
Nooney & Solay LLP
Rapid City, South Dakota                 Attorneys for defendant and
                                         appellee.

* * * *

ARGUED
NOVEMBER 18, 2020
OPINION FILED **01/05/22**

JENSEN, Chief Justice

[¶1.] Julie Godbe suffered horrific injuries after her bicycle tire caught in a storm drain grate in Rapid City (City). Julie and her husband David (Godbes) sued City for negligence. The circuit court granted City's motion for summary judgment, determining Godbes failed to generate a genuine issue of material fact showing that City breached its statutory duty under SDCL 31-32-10. We affirm.

## Facts and Procedural History

[¶2.] On July 17, 2015, Julie was riding her bicycle with David on East Saint Patrick Street (Street) in Rapid City. The Street is 1.3 miles long and is bisected by Rapid Creek. Julie was traveling near the curb on the west side of Rapid Creek when she rode over a storm drain grate (Grate 4), which had steel bars running parallel to the Street. Julie's front bicycle tire fell through the grate, causing her to catapult over the bicycle handle bars and land on her face. The impact broke her neck and injured her spinal cord, leaving her a quadriplegic.

[¶3.] In October 2015, Godbes' attorney and a representative from City took photographs of Grate 4 and the other storm drain grates on the Street. The photographs showed that twenty-five of the Street's thirty grates, including Grate 4, had bars that ran parallel to the Street. The photographs also showed that cross metal straps had been welded on the parallel bars of some of the grates located to the east of Rapid Creek. Several other grates on the east side of Rapid Creek had indents where it appeared that cross straps had been welded to the grates at one time but were subsequently torn off. There were also two, newer looking grates designed with perpendicular bars. In contrast, photographs taken to the west of

Rapid Creek, including Grate 4, did not show that cross straps had been welded on their parallel metal bars. Further, none of the grates to the west of Rapid Creek had visible indents that would have suggested welded straps had been torn off. However, photographs showed that at least two of the grates to the west of Rapid Creek had been replaced with grates that had been designed with perpendicular bars or checkered-plated bars.[1]

[¶4.] Sometime after the photographs were taken, City received statutory notice of Godbes' intention to bring an action. Godbes' counsel also corresponded with City, requesting that City replace all the parallel designed storm water grates. Subsequently, City ordered Grate 4 and the other grates on the Street to be replaced. There is no evidence that City gave Godbes notice before it replaced the grates or that Godbes' counsel requested that Grate 4 be preserved. City failed to preserve Grate 4 or any of the other grates that were replaced.

[¶5.] In May 2016, Godbes filed a complaint alleging that City was negligent for failing to replace the storm water grates on the Street. They alleged City assumed responsibility to maintain the Street in 2004 and knew for years before the accident that storm water grates with parallel bars were dangerous. Godbes alleged a separate claim for negligent failure to maintain and repair Grate 4. David also brought a claim for loss of consortium.

[¶6.] City filed a pre-answer motion to dismiss the complaint, pursuant to SDCL 15-6-12(b)(5), arguing that Godbes failed to state a claim upon which relief

---

1. Photographs of the grates and the layout of the Street are included in an appendix to this opinion.

could be granted. City argued it owed no duty of care to Godbes for the design, maintenance, or a dangerous condition of the Street under *Hohm v. City of Rapid City*, 2008 S.D. 65, 753 N.W.2d 895. "[C]ities' common-law duties respecting streets were abrogated by . . . legislative enactments. The duties are now limited by statute [i.e., SDCL 31-32-10] . . . ." *Id.* ¶ 20, 753 N.W.2d at 905. City claimed that its duty under SDCL 31-32-10 is limited to repair and only arises when a city receives notice that damage to a road creates a safety hazard. City contended that the complaint did not allege Grate 4 was in disrepair, or that City had notice of any damage to Grate 4, as required by SDCL 31-32-10.

[¶7.]         Godbes responded that Grate 4 was "out of repair" pursuant to SDCL 31-32-10 because it was dangerous and did not comply with City's infrastructure standards. In resisting the motion to dismiss, Godbes offered a 2007 report (Report) containing City-approved "standard specifications," which set forth that grates with bars running parallel to the streets should be replaced with grates that had perpendicular metal bars. Godbes also presented a 2011 City Master Plan (Master Plan), which recommended City continue to replace or retrofit the unsafe grates.[2] The Master Plan recognized the changes would "reduce City's liability exposure." Godbes also argued *Hohm* did not eliminate a city's common law duties to make its roadways safe, but they have not raised this issue on appeal.

---

2.    The Master Plan stated: "City should continue its efforts to retrofit existing drainage grates. Some older drainage grates can create slippery conditions for bicyclists and/or catch a bike wheel if they have metal grates that are parallel to the direction of travel . . . . New grate styles have grates that are perpendicular to the travel lane . . . . These newer grate types are much safer for bicyclists."

[¶8.]        The circuit court issued a memorandum decision granting City's motion to dismiss.  It held that Godbes had only alleged a design defect in the grates for which City did not owe a duty, and Godbes failed to state a claim under SDCL 31-32-10 because they did not allege that the Street or its grates were in a damaged condition at the time of the accident.  Before the circuit court entered an order dismissing the complaint, Godbes filed a motion to amend their complaint and a motion to reconsider.  The circuit court entered an order granting Godbes' motion to file an amended complaint but denied the motion to reconsider and dismissed the original complaint.

[¶9.]        In their amended complaint, Godbes realleged many of the same claims from the original complaint, but also alleged that City had modified Grate 4 and other Street grates by welding metal straps across the parallel bars of the grates.  Godbes claimed that the modified grates were in a damaged condition at the time of the accident because the welded straps had been torn off.  Further, they alleged City breached its duty under SDCL 31-32-10 because it knew or should have known that the straps were damaged and failed to repair them.

[¶10.]        After submitting their amended complaint, Godbes deposed four City employees including: Donald Brumbaugh, City Street Superintendent from 2004 to 2016; Dale Tech, Public Works Director and formerly an engineer with City; Trevor Schmelz, former Risk Manager for City; and Dale Pfeifle, current City Street Superintendent and former Assistant Street Superintendent.  The employees acknowledged City was aware of its dangerously designed grating system for years and had planned to replace or modify grates that had parallel bars prior to the

accident. All four employees testified that some of City's grates had been modified with welded cross straps. They also agreed that if the welded straps on grates were torn off, then the grates needed repair and were dangerous to cyclists.

[¶11.] Three of the employees had worked for the City for years prior to the accident. However, no employee could identify which grates on the Street had been welded with cross straps prior to Julie's accident, or when any of these modifications were made. In his deposition, Brumbaugh testified that cross straps may have been welded onto the grates before City assumed responsibility for the Street in 2004. After reviewing the photographs, he also testified that the welded straps on the grates to the east of Rapid Creek appeared to be old. In an affidavit, Brumbaugh stated he was not aware that City had ever welded straps on the Street's grates between 2004 and Julie's accident in 2015 but stated City had welded cross straps on the Street's grates following Julie's accident. However, the record does not show which grates the affidavit references.

[¶12.] City employees also acknowledged that cross straps welded onto the grates could be damaged and therefore needed to be maintained. Brumbaugh stated that straps were only "temporary fixes." Tech testified that straps required ongoing maintenance to keep streets safe. Brumbaugh and Tech also stated that snowplows or heavy street equipment could tear off the straps. Brumbaugh continued that, "in most cases," the bars of a grate would have visible indents if their straps had been torn off. However, whether a grate shows visible markers of prior welding "[d]epends on how [the straps] were put on."

[¶13.] Despite City's awareness that modified grates required maintenance, Brumbaugh stated that City lacked an official grate repair policy. However, he clarified that "inspection[s of the grates] have and do occur," and City would examine grates as "part of [City's] criteria for inspection." During routine inspections, Brumbaugh claimed that City employees would weld straps onto grates that they observed were dangerous, stating City "would definitely [weld straps onto dangerous grates] at some point in time. It's a question of when [City] ha[d] time to do it." But "City is full of hundreds of grates . . . . [It] could be weeks, months, days, whatever, between checks that any number of things could happen to grates[.]".

[¶14.] Godbes also asked City employees about the decision to replace and dispose of Grate 4 and the rest of the grates on the Street after Julie's accident. Brumbaugh could not state when City removed and replaced these grates. However, he stated that Tech would have given him an oral directive to perform the work before Brumbaugh retired at the end of 2016. Brumbaugh also testified that he knew there had been an accident involving one of the Street's grates when he would have received the directive. Brumbaugh did not replace the grates personally and did not know who did. He also did not know what happened to the grates after they were replaced.

[¶15.] Tech confirmed that he issued the directive to replace the Street's grates, but he could not remember when he did so. When he made the decision, Tech knew that one grate on the Street was the subject of possible litigation. Tech also acknowledged that this grate could have been important evidence in the lawsuit. Nevertheless, Tech stated that it "never occurred to [him]" to earmark and

preserve Grate 4. Tech and Schmelz, like Brumbaugh, denied any knowledge of who physically replaced the grates and how City disposed of them.

[¶16.] Following discovery, City filed a motion for summary judgment. It argued that Grate 4 could not have been damaged because the photograph of Grate 4 showed "absolutely no evidence of crossbars." In support, City offered the opinion of its welding expert Charles Leeper, who opined that "upon thorough analysis" of the photographs, "the grate in question . . . had never been welded on before Ms. Godbe's accident."

[¶17.] In resisting the motion, Godbes acknowledged the photograph of Grate 4 did not show obvious signs of welding but countered that many other grates on the Street did. From this evidence, Godbes claimed that a jury could infer every grate on the Street, including Grate 4, had been welded with cross straps at some point, but the welded "cross pieces [were] eventually . . . ripped off." Additionally, Godbes argued City "knew or should have known" that the straps had been damaged because it knew straps were only "temporary fixes." Finally, Godbes argued City intentionally destroyed Grate 4, which would entitle them to a spoliation instruction at trial permitting the jury to infer that had Grate 4 been preserved, it would have shown evidence of welding.

[¶18.] The circuit court granted City's motion for summary judgment, holding Godbes failed to offer sufficient evidence that City had notice that Grate 4 had been modified with welded cross straps and was subsequently damaged. The court did not address Godbes' request for a spoliation instruction. Godbes appeal and raise two issues for our review: (1) whether they generated a genuine issue of material

fact that Grate 4 was damaged at the time of the accident, and (2) whether City received notice of damage as required by SDCL 31-32-10.

## Analysis and Decision

[¶19.]    We review the circuit court's entry of summary judgment de novo. *State v. BP plc*, 2020 S.D. 47, ¶ 18, 948 N.W.2d 45, 52.  "The existence of a duty in a negligence action is a question of law subject to de novo review by this Court." *Hohm*, 2008 S.D. 65, ¶ 3, 753 N.W.2d at 898 (citation omitted).

[¶20.]    "[S]ummary judgment is appropriate when there is no genuine issue of material fact[, and] . . . there must be no genuine issue on the inferences to be drawn from those facts." *A-G-E Corp. v. State*, 2006 S.D. 66, ¶ 17, 719 N.W.2d 780, 786.  "[S]ummary judgment is not a substitute for trial; a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be a sham, frivolous or unsubstantiated . . . ." *Toben v. Jeske*, 2006 S.D. 57, ¶ 16, 718 N.W.2d 32, 37 (citation omitted).  "We view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party." *Luther v. City of Winner*, 2004 S.D. 1, ¶ 6, 674 N.W.2d 339, 343 (citation omitted).

[¶21.]    "We require those resisting summary judgment to show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." *Foster-Naser v. Aurora Cnty.*, 2016 S.D. 6, ¶ 11, 874 N.W.2d 505, 508 (citation omitted).  "A sufficient showing requires that '[t]he party challenging summary judgment . . . substantiate his allegations with sufficient probative evidence that would permit a finding in his

favor on more than mere speculation, conjecture, or fantasy.'" *Nationwide Mut. Ins. Co. v. Barton Solvents Inc.*, 2014 S.D. 70, ¶ 10, 855 N.W.2d 145, 149 (citation omitted). "Mere speculation and general assertions, without some concrete evidence, are not enough to avoid summary judgment." *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 21, 873 N.W.2d 57, 63.

[¶22.] There is no common law right of action against the City with regard to streets or highways. *Hohm*, 2008 S.D. 65, ¶ 20, 753 N.W.2d at 905. Therefore, Godbes argue that their claim arises under SDCL 31-32-10, which provides:

> If any highway, culvert, or bridge is damaged by flood, fire or other cause, to the extent that it endangers the safety of public travel, the governing body responsible for the maintenance of such highway, culvert, or bridge, shall within forty-eight hours of receiving notice of such danger, erect guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and shall repair the damage or provide an alternative means of crossing within a reasonable time after receiving notice of the danger.

However, "[a]lthough this statute imposes a duty, the duty is only to warn of danger and to make reasonably timely repairs upon notice that a damaged roadway is creating a safety hazard. The statute creates no duty to design or construct a roadway safely in the first place." *Wilson v. Hogan*, 473 N.W.2d 492, 496 (S.D. 1991).

[¶23.] To establish that City had a duty under SDCL 31-32-10 to warn of, or to repair a dangerous condition on the Street, Godbes must first demonstrate that Grate 4 was in a damaged condition at the time of the accident. "Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Zephier v. Cath. Diocese of Sioux Falls*, 2008 S.D. 56, ¶ 6, 752 N.W.2d 658, 662. This requires Godbes to present evidence on the question of whether Grate 4 had been modified with welded cross straps and that the straps had been torn off the grate at the time of the accident.

[¶24.] Although the parties argued the question of whether Grate 4 was in a damaged condition in their submissions to the circuit court, the court did not resolve this question in granting summary judgment.[3] Instead, the circuit court assumed, without deciding, that Godbes had offered sufficient facts to establish that Grate 4 was damaged at the time of the accident, and "circl[ed] back to the issue of notice." After applying an actual notice standard to SDCL 31-32-10, the court granted summary judgment to City, holding that "there is nothing in the established record that anyone from the [C]ity had notice of damage (from snowplows or otherwise) . . . to *any* of the grates on [the] Street."

[¶25.] Before applying the notice requirement under SDCL 31-32-10, there must be facts showing that Grate 4 was damaged. SDCL 31-32-10 does not apply if the defects of the highway, such as the dangerous design of the grate system, were "inherent defects in the design or plan of the highway[.]" *Zens v. Chi., Milwaukee, St. Paul and Pac. R.R. Co.*, 386 N.W.2d 475, 478 (S.D. 1986). Therefore, we must resolve the fundamental question of whether there are material facts in dispute that Grate 4 was damaged before considering whether City had notice of any damage to the Grate.

---

3. Both parties have fully briefed and argued this issue on appeal.

[¶26.]     Godbes argue that they have presented sufficient evidence from which a jury may infer Grate 4 had been welded with straps, and its straps had been ripped off. They rely on the Report and Master Plan, which laid out City's plan to replace its grates. Godbes also rely on City employee depositions and the photographs of the grates, which they argue show City had replaced or modified at least some of the grates on the Street with cross straps. Because of the danger posed by City's original grating system, Godbes argue that it stands to reason that City would not have modified some of the grates on the Street without modifying all the grates. Further, Godbes claim the absence of visible straps or indents on the photograph of Grate 4 is not conclusive proof it had never been welded.

[¶27.]     City responds that Godbes have failed to present any evidence to show that Grate 4 was modified and damaged at the time of the accident. In particular, City points to the photographs of every grate on the Street taken by Godbes' counsel shortly after the accident. The photographs taken of Grate 4 and each of the other grates to the west of Rapid Creek do not show any visible signs of welding or damage. In contrast, photographs of every grate with parallel bars on the east side of Rapid Creek showed some evidence of having been welded with cross straps. City also relies on the testimony of its expert, Charles Leeper, who provided an opinion from his review of the photographs that Grate 4 had not been welded.

[¶28.]     Godbes have failed to present any evidence to show that cross straps were ever welded onto Grate 4 and then torn off, leaving Grate 4 in a damaged condition on July 17, 2015. Our decisions permit reasonable inferences to be drawn from the evidence that may support a claim for relief, but inferences that lack a

sufficient factual basis and instead rely on speculation or guesswork are insufficient. *See Quinn v. Farmers Ins. Exch.*, 2014 S.D. 14, ¶ 20, 844 N.W.2d 619, 624–25; *Nationwide*, 2014 S.D. 70, ¶ 10, 855 N.W.2d at 149. Thus, our summary judgment standard recognizes that a party resisting summary judgment is entitled to all "reasonable inferences" in their favor that are supported by the evidence, but where the evidence along with any reasonable inferences requires "speculation, conjecture, or fantasy" to support the claim, summary judgment must be granted. *See e.g., Est. of Elliott ex rel. Elliott v. A & B Welding Supply Co.*, 1999 S.D. 57, ¶ 16, 594 N.W.2d 707, 710; *Tolle v. Lev*, 2011 S.D. 65, ¶ 11, 804 N.W.2d 440, 444; *Hanson v. Big Stone Therapies, Inc.*, 2018 S.D. 60, ¶ 29, 916 N.W.2d 151, 159.[4]

[¶29.] Godbes' claim that Grate 4 was damaged rests entirely on multiple inferences drawn from evidence showing that City knew the design of the parallel grates was unsafe, that straps were welded onto *some* of the parallel grates on the Street, and that *some* straps were torn off these grates. From this evidence, Godbes

---

4. Although not controlling in this case, other courts have adopted rules to ensure an inference has a sufficient factual basis. "[A]n inference cannot be derived from another inference. An inference must be based on a known or proved fact." *Kmart Corp. v. Bassett*, 769 So. 2d 282, 287 (Ala. 2000) (internal quotation marks omitted). "If a party to a civil action depends upon inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences." *Desvarieux v. Bridgestone Retail Operations, LLC*, 300 So. 3d 723, 727 n.3 (Fla. Dist. Ct. App. 2020). "[A] trier of fact . . . may not draw an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts." *Nageotte v. Cafaro Co.*, 828 N.E.2d 683, 692 (Ohio Ct. App. 2005). *See also Schuler v. Mid-Central Cardiology*, 729 N.E.2d 536, 544 (Ill. App. Ct. 2000); *Dildine v. Town & Country Truck Sales, Inc.*, 577 S.E.2d 882, 884 (Ga. Ct. App. 2003); *Carnevale v. Smith*, 404 A.2d 836, 841 (R.I. 1979).

rely on inferences that *all* of the parallel grates on the Street, including Grate 4, must have been welded with straps and that the straps were then torn off without leaving welding indents. Thus, they argue a jury could find Grate 4 was in a damaged condition at the time of the accident. These multiple inferences are not reasonable based upon the absence of any evidence or indication that Grate 4, or any of the grates to the west of Rapid Creek, were ever modified with welded cross straps and then torn off.

[¶30.] In particular, Godbes had the opportunity to inspect and photograph each of the grates on the Street shortly after the accident, yet they failed to present evidence from anyone who saw Grate 4, before or after the accident, that there was any observable indication that Grate 4 had been fitted with straps and was in a damaged condition.[5] The photographs also confirm there is no indication of prior welding or damage to Grate 4, nor have Godbes claimed that the depictions of any of the grates in the photographs were inaccurate.[6] The only verifiable instances in which the straps failed are ones where the parallel grates bear the unmistakable

---

5. The dissent's reliance on Brumbaugh's and Leeper's testimony as creating a genuine issue of material fact is misguided because neither individual indicated that Grate 4 was damaged or displayed any visual markings of welded straps. Further, Brumbaugh and Leeper did not present any evidence, nor are there other facts in the record, that would in any way suggest that all the Street's grates had been uniformly modified with cross straps.

6. The dissent improperly relies on the absence of evidence to argue that "it is equally likely that the grates could have had straps welded to them without photographs showing marks from the welding." Dissent ¶ 43. This admitted absence of evidence does not satisfy Godbes' burden of proof on summary judgment and would leave a jury to guess or speculate at trial whether Grate 4 was in a damaged condition at the time of the accident.

welding marks of the now-missing straps, and these marks can be clearly seen in the photographic evidence.

[¶31.]     But more fundamentally, Godbes have not demonstrated that the installation of welded straps on the parallel grates along the Street was universal. The photographs show that straps had been welded onto every grate to the east of Rapid Creek, while the photographs taken of every grate to the west of Rapid Creek, including Grate 4, show no indication of welding. Further, Godbes have also failed to show City ever installed straps on all the parallel grates on the Street or had a definitive plan to do so. In fact, Godbes own expert testified that he "d[id]n't think there is enough evidence to show that every grate had bars welded across it." A jury would be left to speculate as to whether Grate 4 had ever been fitted with cross straps that had been torn off.

[¶32.]     Based on our review of the record, Godbes have not presented a genuine issue of material fact that Grate 4 was damaged on the day of Julie's accident. *See Bickner v. Raymond Twp.*, 2008 S.D. 27, ¶ 11, 747 N.W.2d 668, 671 (holding that summary judgment was proper when "[n]othing in the record establishe[d] that the township road was damaged or in a defective condition"). As such, SDCL 31-32-10 is inapposite and it is unnecessary for us to address whether City had notice of an undamaged condition. "[T]his Court will affirm the circuit court's ruling granting a motion for summary judgment if any basis exists to support the ruling." *Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 19, 757 N.W.2d 756, 762.

[¶33.] Godbes argue, however, that City's failure to preserve Grate 4, after it had received notice of the impending lawsuit, amounts to spoliation of the evidence. Therefore, they claim an entitlement to an adverse inference instruction against City at trial, which would allow the jury to draw an inference that Grate 4 was damaged if it finds City destroyed the evidence intentionally and in bad faith. *See Red Bear v. SESDAC, Inc.*, 2017 S.D. 27, ¶ 32, 896 N.W.2d 270, 279; *State v. Engesser*, 2003 S.D. 47, ¶ 44, 661 N.W.2d 739, 753.

[¶34.] The circuit court did not address this spoliation claim, and while it may be premature to determine whether a spoliation instruction would be appropriate at trial, the evidence is undisputed that Godbes' counsel had the opportunity to observe and photograph Grate 4 and all the other grates on the Street shortly after the accident, that Godbes urged City to replace the grates but did not request City to preserve Grate 4, and that City replaced *all* the grates on the Street in response to the request from Godbes. Further, even if Godbes managed to overcome this evidence and obtain a spoliation instruction at trial, the jury would be advised that it may only draw an inference that the grate contained evidence unfavorable to City if it first determines that City acted intentionally and with bad faith by not preserving Grate 4 during the process of replacing these grates. The potential for such an inference is not substantive evidence and does not relieve Godbes of their burden at summary judgment to present evidence showing a genuine issue of material fact that Grate 4 was damaged. *See, e.g., Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001); *Todeschi v. Sumitomo Metal Mining Pogo, LLC*, 394 P.3d 562, 577 (Alaska 2017); *Beers v. Bayliner Marine*

*Corp.*, 675 A.2d 829, 833 (Conn. 1996); *McLain v. Taco Bell Corp.*, 527 S.E.2d 712, 716 (N.C. Ct. App. 2000); *DiLeo v. Nugent*, 592 A.2d 1126, 1132 (Md. Ct. Spec. App. 1991). In the absence of facts showing that Grate 4 had been welded and damaged, the possibility that Godbes could present evidence of spoliation by City at trial does not create a genuine issue of material fact for summary judgment purposes.[7]

[¶35.] This is a troubling and tragic case. By all accounts, City knew the design of its grating system was dangerous to cyclists when it assumed responsibility of the Street in 2004. Julie's injuries could have been prevented had City acted on this knowledge and replaced the dangerously designed grates as its own guidelines set forth. However, SDCL 31-32-10 does not provide a remedy against a governmental entity for known dangerous design defects on a highway or street, and any expansion of this statutory duty is within the prerogative of the Legislature, not this Court. Further, our prior decision in *Hohm*—concluding that SDCL 31-32-10 eliminated any common law duties—is binding on this Court and has not been raised as an issue on appeal. Therefore, we affirm.

[¶36.] SALTER and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶37.] KERN, Justice, dissents.

[¶38.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

7. The dissent suggests that questions exist as to whether City destroyed Grate 4 in bad faith so as to give rise to a claim for spoliation of evidence at trial. But even if we were to assume that Godbes can present a case for a spoliation at trial, the dissent fails to cite any authority to support the notion that such an inference is sufficient to create a genuine issue of material fact.

#29251

KERN, Justice (dissenting).

[¶39.] Today the majority affirms a circuit court's erroneous grant of summary judgment, depriving the Godbes of the right to present their claim against the City to a jury for its negligent maintenance of drainage grates that led to Julie Godbe's severe injuries. Therefore, I must respectfully dissent.

[¶40.] When reviewing a circuit court's entry of summary judgment, we consider de novo whether there is a genuine issue of material fact and whether there is a genuine issue on the inferences to be drawn from those facts. *A-G-E Corp.*, 2006 S.D. 66, ¶ 17, 719 N.W.2d at 786. We view the evidence and all reasonable inferences in a light most favorable to the nonmoving party and resolve reasonable doubts against the moving party. *See Knecht v. Evridge*, 2020 S.D. 9, ¶ 51, 940 N.W.2d 318, 333 (citation omitted). Further, "[w]e will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided." *Id.* Applying these well-settled rules here, the City has not shown that the material facts and reasonable inferences drawn therefrom are undisputed as to whether Grate 4 was damaged at the time of the accident, whether spoliation occurred with the destruction of Grate 4, and whether the City had constructive notice of highway damage.

***Whether a genuine issue of material fact exists as to damage on Grate 4***

[¶41.] SDCL 31-32-10 requires the governing body responsible for maintaining a highway to respond promptly to dangerous highway, culvert, or bridge damage. SDCL 31-32-10's plain language encompasses damage to any highway, culvert, or bridge:

> to the extent that [the damage] endangers the safety of public travel, the governing body . . . shall within forty-eight hours of receiving notice of such danger, erect guards over such defect . . . and shall repair the damage or provide an alternative means of crossing within a reasonable time after receiving notice of the danger.

The notice contemplated in SDCL 31-32-10 may be either actual or constructive notice. *Fritz v. Howard Twp.*, 1997 S.D. 122, ¶ 21, 570 N.W.2d 240, 245; *Clementson v. Union Cnty.*, 63 S.D. 104, 256 N.W. 794, 796 (1934). Therefore, for the statutory duty outlined in SDCL 31-32-10 to be present, a plaintiff must show that (1) a highway has been damaged; and (2) the governing body responsible for maintenance of the highway has notice, either actual or constructive, of the damage. The Godbes have sufficiently shown a genuine issue of material fact as to both prongs of this statutory duty, making summary judgment improper.

[¶42.] Accepting the majority's construction of the law, and upon review of the record, the Godbes have established the existence of a disputed genuine issue of material fact, namely, that the highway was damaged because a part of it—Grate 4—was damaged. The Godbes presented multiple photographs of grates along East St. Patrick Street that were damaged by having metal straps scraped off them.[8] The majority opinion attempts to distinguish between damage of the grates west of Rapid Creek on East St. Patrick Street viewed separately from the grates east of Rapid Creek, stating, "The photographs taken of Grate 4 and each of the other

---

8. Once an appendage (like a sign or grate) of a highway is created, it becomes part of the highway. *Fritz*, 1997 S.D. 122, ¶ 20, 570 N.W.2d at 244; *Kiel v. DeSmet Twp.*, 90 S.D. 492, 497, 242 N.W.2d 153, 155 (1976) ("the county . . . erected a warning sign. It then became a physical and integral part of the highway."). The grates were part of the highway and the straps welded to the grates became part of the grates and, thus, part of the highway.

grates to the west of Rapid Creek do not show any visible signs of welding or damage." The majority opinion states that:

> [The City] argued that Grate 4 could not have been damaged because the photograph of Grate 4 showed "absolutely no evidence of crossbars." In support, City offered the opinion of its welding expert Charles Leeper, who opined that "upon thorough analysis" *of the photographs*, "the grate in question . . . had never been welded on before Ms. Godbe's accident."

(Emphasis added). However, Leeper reviewed only the photographs of the 30 grates on East St. Patrick Street that were taken by the Godbes' counsel, which included only one photograph of Grate 4, to determine that the grate never had cross straps attached to it. The majority views this information in contravention of what the law requires: instead of viewing this evidence and all reasonable inferences in a light most favorable to the nonmoving party and resolving reasonable doubts against the moving party, the majority accepts the City's arguments wholesale, as if the facts upon which they are based were not disputed. *See Knecht*, 2020 S.D. 9, ¶ 51, 940 N.W.2d at 333 (citation omitted).

[¶43.] These facts, however, are resolutely disputed by the Godbes. The Godbes specifically challenged welding expert Charles Leeper's opinion as being based on a paucity of information.[9] City employee Brumbaugh stated that "in most cases," the bars of a grate would have visible indents if their straps had been torn off. However, Brumbaugh clarified that whether a grate shows visible markers of

---

9. Specifically, the Godbes moved prior to summary judgment to exclude testimony from Leeper because they allege that he did not rely on sufficient facts and data and that his opinions and testimony were not based on reliable methods or principles. It does not appear from the record that the court ruled on this motion.

prior welding "[d]epends on how [the straps] were put on." Unfortunately, Leeper did not ever look at or test the grates on East St. Patrick Street himself; he only considered visual markers of prior welding from one photograph of Grate 4 in comparison to single photographs of other grates on the street. Leeper answered "Right" to the Godbes' deposition question that "you can't tell from photographs whether some welds took and some didn't take, correct?"[10]

[¶44.] Because Brumbaugh testified that visible markers of prior welding may not appear, depending on how the straps were put on the grate, and Leeper acknowledged that it was impossible to tell from photographs whether the welds on Grate 4 "took" or not, there is uncertainty in the record as to whether Grate 4 had straps welded to it that were scraped off. The majority frames its discussion of this evidence by stating that "[t]he photographs also confirm there is no indication of

---

10. The following exchange also occurred during Leeper's deposition:

    Q: You've seen bad welds?
    A: Yes.
    Q: And you've seen bad enough welds they don't take at all?
    A: Yes.
    Q: And if they don't take at all, they're not going to leave much of a scar, are they?
    A: No.
    Q: And if they don't leave a scar because it's a bad weld done by perhaps a bad welder, you're not going to see much of anything on the metal object you're looking at, correct?
    A: No.
    Q: Well, we don't know the competence of the welder that ever welded on any of these grates, right?
    A: Correct.
    Q: We don't know if there was rust on the grate or the metal object when it was allegedly welded?
    A: Correct.
    Q: We don't know if there was grease on there that could also affect the weld, correct?
    A: Correct. Yeah.

prior welding or damage to Grate 4, nor have Godbes claimed that the depictions of any of the grates in the photographs were inaccurate." Majority Opinion ¶ 30. This reasoning fails to consider that it is equally likely that the grates could have had straps welded to them without photographs showing marks from the welding. Viewing this evidence in favor of the Godbes, there is a genuine dispute of material fact as to whether Grate 4 specifically was damaged, making summary judgment inappropriate.

[¶45.]     The majority opinion bemoans the supposedly unreasonable inferences that must be made in order to view the evidence in favor of the Godbes. It acknowledges the evidence that "the City knew the design of the parallel grates was unsafe, that straps were welded onto *some* of the parallel grates on the Street, and that *some* of the straps were torn off these grates."[11] Majority Opinion ¶ 29. The photograph of Grate 4 shows that there were no straps on Grate 4 at the time of the accident, meaning that the grate either never had straps or that the straps were ripped off. Furthermore, both parties have agreed that when the straps are ripped off of a grate, the grate is damaged.[12] The majority then states that the dissent

---

11.    Viewing the evidence in this way leads to the unnecessarily harsh result that if Julie Godbe's tire had fallen through a different grate (that was just as dangerous—for example, Grate 11, as shown in the appendix to the majority opinion) on the same street, she could have recovered fully, but because her tire fell through the wrong grate, she cannot recover at all. The law does not require this type of arbitrary distinction.

12.    City employee Brumbaugh stated in his deposition:
       Q:     And you understand that if there are welded straps on [the grates], that they need to be maintained?
       A:     Typically.
       Q:     And that's because if you don't maintain them, it may create a hazard?
                                                             (continued . . .)

takes multiple, unreasonable inferences to draw the conclusion that Grate 4 had straps welded to it which were ripped off. However, there are two potential inferences that can be drawn here: the first, in favor of the City, that there never were straps on Grate 4; the second, in favor of the Godbes, that there were straps on Grate 4 that had been ripped off. Because we are reviewing a summary judgment and the Godbes are the nonmoving party, we must view the evidence and the inferences to be drawn therefrom in favor of the Godbes. The majority ignores our clear summary judgment standard to conclude otherwise.

### Whether spoliation occurred

[¶46.]     Compounding the issue of whether Grate 4 had straps welded to it is the fact that the grates at issue have been destroyed by the City. This destruction of evidence prohibits further inquiry into whether Grate 4 had straps welded onto it. Therefore, this case presents concerning, undisputed facts involving the

---

(. . . continued)

A:     It could.
          [ . . . ]
Q:     And typically the equipment that you could think of that would tear metal straps off a metal grate would be a snowplow, correct?
A:     If they were to hit them, yes.
          [ . . . ]
Q:     And the city has gone out and repaired metal straps that have been torn off of grates, correct?
A:     If we receive a complaint on them.
Q:     And that would show the knowledge that the city would have that sometimes equipment may tear off the straps?
A:     It could be the cause, yes. I mean, there's any number of reasons.
          [ . . . ]
Q:     So once the straps are torn off, the grate in its configuration now with the straps has been damaged, correct?
A:     Correct.

potential intentional spoliation of key evidence, and the City's action prevents further inquiry into whether Grate 4 was damaged.

[¶47.]     There is no question that the City had control over Grate 4 at all times during the litigation. The City intentionally removed the Grate and destroyed it while also admitting to knowing about the Godbes' case against the City. As troubling as that appears, additionally, there is no evidence of who removed the grates for the City, how the grates were disposed of, or when the decision was made to destroy the grates. Grate 4 was crucial evidence of the Godbes' claim, and other than a solitary, inadequate photograph taken by the Godbes' own attorney, no other evidence now exists concerning the possibility of welding repairs to Grate 4. A closer look or more sophisticated examination of Grate 4 by an expert for the Godbes is now impossible. And Charles Leeper, the City's own welding expert, testified that there are physical tests that could have been run on the actual grate, had it not been destroyed, to show whether it had been welded on or not.

[¶48.]     The Godbes argued in their brief to the circuit court that the City intentionally destroyed the grates after being notified of the pending litigation. Notably, the circuit court's memorandum decision makes no mention of whether intentional spoliation occurred and whether it warranted sanctions. As the record now stands, it is not possible to discern the City's mindset when it destroyed Grate 4, and this Court does not undertake fact-finding to determine whether a party acted in good or bad faith.

[¶49.]     Litigants are under a strict duty to refrain from the intentional destruction of evidence, which is a form of obstruction of justice. *Engesser*, 2003

S.D. 47, ¶ 44, 661 N.W.2d at753. Accordingly, when spoliation occurs, the circuit court may grant a "spoliation inference," permitting the fact-finder to infer that "destroyed evidence would have been unfavorable to the position of the offending party." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994). We have previously explained that:

> An instruction on the inference that may be drawn from the spoliation of evidence is proper only when substantial evidence exists to support a conclusion that the evidence was in existence, that it was in the possession or under the control of the party against whom the inference may be drawn, that the evidence would have been admissible at trial, and that the party responsible for destroying the evidence did so intentionally and in bad faith.

*Engesser*, 2003 S.D. 47, ¶ 46, 661 N.W.2d at 755. All elements except that of bad faith are definitively present here. Grate 4 was in existence, it was under the control of the City, the City intentionally destroyed it, and it would have been admissible at trial. Therefore, if the City destroyed Grate 4 in bad faith, the Godbes should be entitled to an inference that Grate 4 would have been unfavorable to the City's position.

[¶50.] The Godbes have validly challenged the City's expert opinion that Grate 4 had never been welded, creating a genuine issue of material fact. This genuine issue of material fact *cannot now be resolved* because of the City's action in destroying the grates. The majority opinion here traps the Godbes within its own circular reasoning: it relies on an expert opinion based on a single photograph to determine conclusively that Grate 4 never had cross straps welded to it. The majority then faults the Godbes for not providing more evidence about the grate to show that it was damaged, even though the City destroyed the grate, prohibiting

the Godbes from providing more evidence. This creates a perverse result in that, because the City destroyed evidence, it prevails on summary judgment.

***Whether the City had constructive notice of highway damage***

[¶51.] The majority acknowledges that the circuit court did not grant summary judgment on either of the two issues discussed above; rather, the circuit court "assumed, without deciding, that Godbes had offered sufficient facts to establish that Grate 4 was damaged at the time of the accident," and then applied "an actual notice standard to SDCL 31-32-10" and "granted summary judgment to City, holding that 'there is nothing in the established record that any one from the [C]ity had notice of damage (from snowplows or otherwise) . . . to *any* of the grates on [the] Street.'" Majority Opinion ¶ 24. The majority does not undertake any analysis on this issue, but because the circuit court mistakenly required evidence of actual notice when only constructive notice was required, a brief discussion of the constructive notice requirement is important.

[¶52.] The second requirement of the statutory duty in SDCL 31-32-10 is that the governing body of the highway have notice of damage, whether constructive or actual. Constructive notice occurs when an entity "has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and [that entity] omits to make such inquiry with reasonable diligence[.]" *Fritz*, 1997 S.D. 122, ¶ 21, 570 N.W.2d at 245 (citation omitted). Here, the City had knowledge that snowplows regularly scraped cross straps off the grates on St. Patrick Street, damaging the grates and making them unsafe for bicyclists. Specifically, the City had to regularly maintain the welded straps because it knew

that straps were often ripped off the grates, creating a safety hazard, and multiple photographs of various grates along East St. Patrick Street show grates with partially ripped-off straps. That the City knew that the straps were regularly being ripped off by the snowplows put the City on "actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact [that straps were being ripped off]." *See id.* The City then "omit[ted] to make such inquiry [whether straps had been ripped off any grates] with reasonable diligence," therefore, the City should be "deemed to have constructive notice of the fact [that the straps had been ripped off] itself." *See id.*

[¶53.]    Here, the City knew that grates were unsafe and damaged if straps were ripped off. However, the City, while knowing that snowplows regularly ripped off straps, chose not to check if any grates were damaged after plowing, thus willfully remaining ignorant as to whether any grates had been damaged and the highway was unsafe. Constructive notice exists to hold responsible those who choose to ignore the potential danger that they themselves have caused—and the City chose to, and got away with, ignoring this danger.

[¶54.]    The issue of constructive notice is to be determined by the trier of fact. Here, as in *Fritz*, it is "a question of fact for the jury to determine whether" the City should have discovered the highway defects "in time to replace [the grates] before this accident." 1997 S.D. 122, ¶ 22, 570 N.W.2d at 245. This evidence presents a genuine issue of material fact as to whether the City had constructive notice of the damage to the highway from snowplows ripping off the straps welded onto the

highway grates.  Therefore, summary judgment was inappropriate on the issue of notice.

### *Conclusion*

[¶55.]    For these reasons, I would reverse the court's grant of summary judgment and remand this case for fact-finding regarding whether Grate 4 had perpendicular straps welded to it that were ripped off, whether the City engaged in intentional, bad-faith spoliation of key evidence, and whether the City had constructive notice of highway damage.

#29251

## Appendix

East Saint Patrick Street



West of Rapid Creek





East of Rapid Creek



