#30247, #30248-a-JMK

**2024 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KELLY J. REDLIN, as beneficiary of the
HELENE M. REDLIN TRUST, u/t/d
December 14, 2004,                              Plaintiff and Appellant,

    v.

FIRST INTERSTATE BANK, as
Co-Trustee of the HELENE M. REDLIN
TRUST, u/t/d December 14, 2004; and
CHARLES A. REDLIN, as Co-Trustee of the
HELENE M. REDLIN TRUST, u/t/d
December 14, 2004,                              Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CARMEN MEANS
Judge

* * * *

COREY T. DENEVAN
SHANNON R. FALON
MEGHANN M. JOYCE of
Denevan Falon Prof. LLC
Sioux Falls, South Dakota                       Attorneys for plaintiff
                                                and appellant.

* * * *

ARGUED
OCTOBER 5, 2023
OPINION FILED **01/31/24**

\* \* \* \*

VINCE M. ROCHE
ASHLEY R. BROST of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota

Attorneys for defendant and
appellee First Interstate Bank.


JOE ERICKSON
LEE SCHOENBECK of
Schoenbeck & Erickson, P.C.
Watertown, South Dakota

Attorneys for defendant
and appellee Charles A. Redlin.

KERN, Justice

[¶1.]         Helene Redlin established a trust with assets of approximately $3 million in order to care for her children in case of financial difficulty.  In 2016, she appointed Great Western Bank, the predecessor to First Interstate Bank, as sole trustee.  A few months later, she appointed her son Charles as trustee and First Interstate as administrative trustee to exercise powers and authorities as directed by the co-trustees.  After Helene's death, the trust assets were placed in a money market account, earning a small amount of interest income.  Helene's daughter Kelly sued Charles and First Interstate for breach of fiduciary duty, arguing that their failure to properly invest the trust assets constituted bad faith and gross negligence.  Charles and First Interstate moved for summary judgment, which was granted by the circuit court.  While deciding this motion, the circuit court also denied Kelly's motion for further discovery on potential communications between Charles and First Interstate regarding the trust.  Kelly appeals, arguing that summary judgment was inappropriate as a matter of law and asserting that certain disputed issues of material fact entitle her to further discovery.  We affirm.

## Factual and Procedural Background

[¶2.]         On December 14, 2004, Helene M. Redlin established a trust of last recourse (2004 Trust), designed to provide for her children if their other financial resources failed.  In addition to a small amount of cash and an interest in the Helene Redlin Limited Partnership, the 2004 Trust assets included a $3 million life insurance policy on Helene.  Upon Helene's death, any assets over $3 million were to be distributed to the Terry A. Redlin and Helene M. Redlin Dynasty Trust.  Her

daughters, Kim and Kelly, could then, at the discretion of the trustee, receive income and principal distributions from the remaining assets "for their health, support and education, taking into consideration their other financial resources of any kind." In the event of Kim and Kelly's deaths, Helene's son Charles could also receive income and principal distributions from the 2004 Trust under identical conditions. Any assets remaining after the death of Helene's children would be gifted to the Redlin Art Center.

[¶3.] Charles, Kelly, and Kim are also the beneficiaries of two other family trusts. The Helene M. Redlin Grantor Trust, established in 2017, is split into three subtrusts of $11.6 million for each of Helene's children. Charles, Kelly, and Kim also received $1 million each through another trust established in 2000. These funds were distributed to Charles, Kelly, and Kim without consideration for their interest in the 2004 Trust.

[¶4.] Among other provisions, the language of the 2004 Trust allowed Helene to appoint and remove trustees, establish plans for the succession of trustees, and appoint a Trust Protector as well as an Investment Advisor. According to Article III, Section A, Helene could also appoint "a successor trustee for limited or general purposes and accord specific responsibilities and powers."

[¶5.] Article XI, Section A of the 2004 Trust grants specific powers to trustees, including the ability to "open and maintain one or more savings accounts or checking accounts and . . . deposit to the credit of such account or accounts all or any part of the trust property, irrespective of whether such property may earn interest." In the event of multiple co-trustees, Article XI, Section O provides that

decisions are to be made by majority vote, with unanimity required where only two co-trustees are qualified to vote. Article XI, Section K of the 2004 Trust also waives the Prudent Investor Rule:

> In exercising the investment powers conferred above, the trustee may (but is not directed to) acquire or continue to hold any property received by the trustee, even though not of a kind usually considered suitable for trustees to acquire or hold (including investments that would be forbidden by the "prudent investor rule" or the "prudent person rule," as may be applicable. . .), or even though an investment may constitute a larger proportion of the trust than, but for this provision, would be appropriate, and irrespective of any risk, nonproductiveness, or lack of diversification.

At the end of this waiver, Helene made explicit her intent to "grant the trustee the broadest possible discretion in determining what constitutes an appropriate investment, acceptable level of risk and proper investment strategy, consistent with his fiduciary duties."

[¶6.]     In the 2004 Trust documents, Robert M. Ronayne was designated as the initial trustee and no appointments were made to fill the positions of Trust Protector or Investment Advisor. However, in October 2016, Helene appointed her sister, Jill Fahnhorst, as Trust Protector. Pursuant to her new authority under Article V, Jill immediately removed Ronayne as trustee and Helene designated a plan of successor trustees, appointing Great Western Bank, the predecessor to First Interstate Bank, "as the successor and sole Trustee of the Trust." Later, in December 2016, Helene signed a document (Appointment Instrument) appointing her son Charles as trustee and Great Western "as an administrative trustee to exercise such powers and authorities as the co-trustees may, from time to time, direct."

[¶7.] Helene died in January 2020 and life insurance proceeds of $3 million were distributed to the 2004 Trust. The assets were then placed in a money market account at Kovack Securities, a Florida financial firm. As required by the terms of the 2004 Trust, assets in excess of $3 million were distributed to the Terry A. Redlin and Helene M. Redlin Dynasty Trust in October 2020. From March 2020 to April 2021, the money market account yielded $843.23 in interest. Learning of this rate of return, Kelly retained Paul Freidel, a financial expert, to assess the economic damage to the 2004 Trust while it was held in the low interest money market account. Freidel opined that if the $3 million in trust assets were aggressively invested from March 31, 2020 through December 31, 2021, the 2004 Trust would have reaped a total investment return of $2,388,768.

[¶8.] Based on this information, Kelly filed suit against Charles and First Interstate, alleging breach of fiduciary duty and seeking their removal as trustees. Kelly argued that Charles and First Interstate were both co-trustees and that they had breached their fiduciary duties by failing to invest the trust assets more aggressively. Despite Helene's waiver of the Prudent Investor Rule, Kelly claimed that Charles and First Interstate remained liable for investment decisions made unreasonably or in bad faith under SDCL 55-4-30. To support this claim, Kelly relied upon Freidel's affidavit, which concluded that placing the 2004 Trust assets in a money market account was "egregiously unreasonable given the low-interest rate environment during this time period and the fact that [the 2004 Trust] . . . was not expected to be tapped for a considerable length of time."

[¶9.] First Interstate and Charles moved for summary judgment. First Interstate argued that its appointment as administrative trustee in 2016 had removed it from general trustee status, leaving Charles as the sole general trustee. First Interstate reasoned that, due to its ostensibly inferior position to Charles, it had no fiduciary duty to invest the 2004 Trust assets. However, even if the bank was a general trustee, both First Interstate and Charles maintained that waiver of the Prudent Investor Rule shielded them from liability for placing the 2004 Trust assets in the money market account. Relying on the language of the 2004 Trust, they contend that Article XI, Section K explicitly authorized the trustee(s) to make investment determinations "irrespective of . . . nonproductiveness." In their view, Kelly's allegations of bad faith required her to "allege something far more egregious" such as "an investment in an illegal drug distribution syndicate or an investment in a well-publicized Ponzi scheme." Finally, in response to Kelly's claimed issues of material fact regarding fiduciary duty, First Interstate argued that "the only material facts that matter" were the language of the 2004 Trust and the undisputed reality that First Interstate was, at least, an administrative trustee.

[¶10.] In response, Kelly argued that there were disputed issues of material fact regarding the scope of First Interstate's fiduciary duties. She referenced "contradictory emails" between First Interstate employees regarding whether the bank served as a general or administrative trustee. Specifically, Becky Conger, the Wealth Management Administrator, told Scott Olson, the Director of Fiduciary Services, that "it appears we are trustee, not just administrative trustee on this account." However, in a subsequent email, she appeared to revise her opinion based

on an unidentified document: "Sorry-I found the document. We are only admin trustee!" Kelly claimed that, although "it is likely that Ms. Conger is referring to the appointment of Charles as co-trustee," she was nevertheless "entitled to conduct further discovery . . . on the issue of FIB's status as co-trustee of the Trust."

[¶11.]     After hearing argument from the parties, the circuit court issued a memorandum opinion determining that the 2016 Appointment Instrument amended First Interstate's status from general trustee to administrative trustee, thereby limiting its duties and liability. The court concluded that there was no evidence in the record that Charles had directed First Interstate to otherwise invest the trust assets, much less that First Interstate ignored any such instruction. The court therefore rejected Kelly's argument that, as an administrative trustee, First Interstate should be held liable for the alleged "wrongful acts" of Charles. According to the court, because First Interstate was in a "position of inferiority to Charles," it could not be held liable for his actions. The court granted First Interstate's motion for summary judgment and denied Kelly's motion to remove the bank as trustee.

[¶12.]     Regarding Charles, the circuit court held that, even though he did have a fiduciary duty to invest the trust assets, this duty was limited by Article XI, Section K of the 2004 Trust, which waived the Prudent Investor Rule. The court determined, based on the record, "that Charles did invest the Trust's assets, albeit conservatively, into a money market account that increased the assets by $843.23." According to the court, allowing Kelly's "blank assertions" that this investment strategy was "unreasonable" to constitute a material issue of fact would "present[]

an indiscernible standard for future trustees and courts." The court, concluding that Charles had not breached his fiduciary duty, granted his motion for summary judgment, and denied Kelly's motion for his removal as trustee.

[¶13.]    Kelly raises three issues on appeal, which we restate as follows:

1.    Whether First Interstate Bank is a general co-trustee of the 2004 Trust.

2.    Whether the terms of the 2004 Trust waived the Prudent Investor Rule and absolved Charles and First Interstate Bank of any duty to invest the 2004 Trust assets.

3.    Whether there are disputed questions of fact regarding whether Charles and First Interstate Bank breached their fiduciary duties by failing to invest the 2004 Trust assets.

**Standard of Review**

[¶14.]    "We review an order granting summary judgment de novo and determine 'whether there were genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law.'" *In re Matheny Family Trust*, 2015 S.D. 5, ¶ 7, 859 N.W.2d 609, 611 (quoting *Law Cap., Inc. v. Kettering*, 2013 S.D. 66, ¶ 10, 836 N.W.2d 642, 645). On review, "[t]he evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. . . . If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.'" *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 10, 758 N.W.2d 436, 443.

## Analysis

### 1.    Whether First Interstate Bank is a general co-trustee of the 2004 Trust.

[¶15.]    Because our resolution of the second issue presented by Kelly is dispositive, we need not determine whether First Interstate Bank is a general or administrative trustee. "To recover for breach of fiduciary duty, a plaintiff must prove: (1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages." *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 38, 652 N.W.2d 756, 772 (citation omitted). Regardless of First Interstate's trustee status, if investing the 2004 Trust assets in a money market account was not a breach of fiduciary duty, then summary judgment is appropriate as to both Charles and First Interstate.

### 2.    Whether the terms of the 2004 Trust waived the Prudent Investor Rule and absolved Charles and First Interstate Bank of any duty to invest the 2004 Trust assets.

[¶16.]    Even if First Interstate was a general co-trustee, Kelly, in order to avoid summary judgment, must prevail on her legal claim that the waiver of the Prudent Investor Rule did not relieve the co-trustees of their fiduciary duty to invest the 2004 Trust assets in something other than the money market account. Preliminarily, we note that, since no Investment Advisor has been appointed, investment powers and responsibilities are entrusted to the trustees by Article IV, Section B. Article XI, Section K also purports to waive the Prudent Investor Rule

and "grant the trustee the broadest possible direction in determining what constitutes an appropriate investment."

[¶17.] Notwithstanding this apparent waiver, Kelly argues that there is a statutory "floor [for liability] beneath which the governing trust instrument cannot go." In support of this proposition, she cites SDCL 55-4-30, which provides that "[a] provision of a trust instrument relieving a trustee of liability for breach of trust is unenforceable to the extent that it relieves the trustee of liability for breach of trust committed in bad faith or as a result of gross negligence." Kelly further asserts that "SDCL 55-5-12 allows the settlor to expand, restrict, eliminate, or otherwise alter the investment responsibilities imposed on a trustee but further provides that a trustee remains liable for actions that are unreasonable or taken in bad faith." According to Kelly, "while Charles and the Bank may not be held to the Prudent Investor Rule they nonetheless remain liable . . . if they have engaged in gross negligence or bad faith."

[¶18.] Charles and First Interstate respond that their reasonable reliance on the waiver, which explicitly allows for "nonproductive" investments, precludes any liability for the supposed lost investment income. First Interstate also argues that the gross negligence contemplated in SDCL 55-4-30 requires allegations of misconduct much more serious than the conservative investment strategy at issue here. First Interstate points out that, by Kelly's own account, the 2004 Trust assets did produce income in the money market account, albeit much less than she would have preferred.

[¶19.] We have not yet been asked to interpret the terms of SDCL 55-5-12, which provides that "[t]he provisions of this chapter may be expanded, restricted, eliminated, or otherwise altered by express provisions of the trust instrument. The trustee is not liable to a beneficiary for the trustee's reasonable and good faith reliance on those express provisions." Kelly seems to argue that, while this statute may permit waiver of the Prudent Investor Rule, it also creates liability for "actions that are unreasonable or taken in bad faith." However, the statutory text focuses not on the conduct of the trustee, but rather on the trustee's "reliance on [the] express provisions" of a trust. Thus, the statute focuses our attention on whether a trustee's actions were based on a good faith, reasonable interpretation of the trust documents.[1]

[¶20.] Here, the 2004 Trust specifically waives the Prudent Investor Rule, authorizing trustees to make investment decisions "irrespective of any risk, nonproductiveness, or lack of diversification." Article XI, Section A gives trustees the power to "open and maintain one or more savings accounts or checking accounts and . . . deposit to the credit of such account or accounts all or any part of the trust property, irrespective of whether such property may earn interest." Helene declared in Article XI, Section K that it was her intent to "grant the trustee the

---

1.  Courts in other jurisdictions have interpreted equivalent provisions in a similar manner. *See Culliss v. Culliss as Trustee of Julie A. Culliss Trust*, 514 P.3d 376, 384 (Kan. Ct. App. 2022) (noting that a trustee who was also a beneficiary had "pointed to valid trust provisions he reasonably relied on to distribute the [trust assets] without breaching his duty of loyalty"); *W.A.K. ex rel. Karo v. Wachovia Bank, N.A.*, 712 F. Supp. 2d 476, 482 (E.D. Va. 2010) (holding that, where the Prudent Investor Rule has been waived, a trustee's "duty only required that its interpretation of the Trust language be reasonable and relied on in good faith").

broadest possible discretion in determining what constitutes an appropriate investment."

[¶21.]     Here, the undisputed facts reveal no evidence that Charles' and First Interstate's reliance on these provisions was unreasonable or in bad faith. Charles and First Interstate were specifically authorized to make investment decisions regardless of risk or nonproductivity of the investment. By placing the 2004 Trust assets in a money market account, yielding conservative interest income, the co-trustees were operating as authorized. Freidel's after-the-fact conclusion that this decision was "egregiously unreasonable" does not generate a question of fact regarding whether the co-trustees were reasonably relying on the 2004 Trust provisions. There is also no indication that Charles or First Interstate operated in bad faith or had ulterior motives that would call their actions into question.

[¶22.]     However, Kelly argues that, even if the Prudent Investor Rule was waived, SDCL 55-4-30 creates an alternative source of liability. According to the statute, "[a] provision of a trust instrument relieving a trustee of liability for breach of trust is unenforceable to the extent that it relieves the trustee of liability for breach of trust committed in bad faith or as a result of gross negligence." The circuit court determined that this provision did not apply because "the terms of the 2004 Trust merely restricted Charles's duty to invest but did not eliminate it." However, we do not read the statute to apply only where a duty has been entirely eliminated. The statute centers on whether an instrument relieves a trustee of liability "to the extent" of bad faith or gross negligence. Regardless of whether a duty is limited or eliminated, the statute, acting as a liability floor, will render a

-11-

waiver partially invalid *to the extent* it shields trustees from liability for bad faith or gross negligence. We thus conclude that SDCL 55-4-30 prevents the 2004 Trust from waiving liability for gross negligence and bad faith and that Charles and First Interstate remain liable for any such potential misconduct.[2]

[¶23.] Kelly asserts that "[t]he question whether the Co-Trustees' conduct in allowing $3 million in cash to sit in a money market account rises to the level of gross negligence or bad faith is an issue for the jury." While acknowledging that "breach of fiduciary duty is a question of fact generally reserved for the jury," the circuit court found persuasive *Nelson v. First Nat'l Bank and Trust Co. of Williston*, where the Eighth Circuit Court of Appeals granted summary judgment on the basis of trust language waiving the Prudent Investor Rule. *See* 543 F.3d 432 (8th Cir. 2008). The Eighth Circuit specifically found that the plaintiff had not alleged sufficient facts to establish bad faith. *Id.* at 436–37. Here, similar reasoning persuades us that summary judgment is appropriate in this case as to the claim of breach of fiduciary duty.

[¶24.] "We require 'those resisting summary judgment to show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof.'" *Foster-Naser v. Aurora Cnty.*, 2016 S.D. 6, ¶ 11, 874 N.W.2d 505, 508 (citation omitted). "A sufficient

---

2. Notably, the Trust document contains language similar to that contained in SDCL 55-4-30, at least with regard to the liability of non-corporate trustees. Article XI, Section X of the Trust states that a "non-corporate trustee shall not be liable for any loss occasioned by acts in good faith in the administration of such trust . . . and in any event a non-corporate trustee shall be liable only for willful wrongdoing, or gross negligence, but not for honest errors of judgment."

showing requires that '[t]he party challenging summary judgment . . . substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture or fantasy.'" *Godbe v. City of Rapid City*, 2022 S.D. 1, ¶ 21, 969 N.W.2d 208, 213 (alteration in original) (omission in original) (citation omitted).  "Mere speculation and general assertions, without some concrete evidence, are not enough to avoid summary judgment."  *Id.* (citation omitted).

[¶25.]     Kelly makes the general assertion that Charles and First Interstate were grossly negligent and acted in bad faith by not aggressively investing the 2004 Trust assets.  She relies on Freidel's analysis of lost investment returns and his conclusion that placing the assets in a money market account was "egregiously unreasonable."  However, co-trustees of the Trust were authorized to invest the assets "irrespective of . . . nonproductiveness," including in a checking or savings account "irrespective of whether such property may earn interest."  Kelly also admits in a footnote that Freidel's analysis is likely based on an incorrect time frame because Charles and First Interstate "did begin to slowly invest the Trust assets into the market in 2021."[3]

[¶26.]     Kelly's allegations of bad faith and gross negligence, at their core, seem to rest on a belief that Charles and First Interstate should have started investing sooner and more aggressively.  Even if Freidel's analysis on this point was completely accurate, we cannot say the mere loss of potential investment returns

---

3.     Freidel's analysis assumed that the 2004 Trust assets were exclusively invested in the money market account from March 31, 2021 to December 31, 2021.

constitutes gross negligence or bad faith on the record before us. We have previously clarified that gross negligence consists of willful or wanton misconduct. *See Fischer v. City of Sioux Falls*, 2018 S.D. 71, ¶ 8, 919 N.W.2d 211, 215. That standard is simply not met in this case.

[¶27.] Charles and First Interstate were not required to invest the money in any particular way under the 2004 Trust documents. Indeed, they were authorized to do exactly what they did—keeping the entirety of the trust assets in a checking or savings account, irrespective of the rate of interest. We also note that the 2004 Trust was designed as a last recourse for Helene's children should all other financial resources fail. Charles and First Interstate did not commit willful or wanton misconduct by keeping the assets in a conservative money market account, earning modest but consistent interest income without any risk from the inherent volatility of the stock market.

[¶28.] Kelly's bare assertions of gross negligence and bad faith invite us to engage in speculation as to the co-trustees' intentions and decision-making process. But speculation cannot save Kelly from summary judgment where, as here, none of the proffered factual allegations would be sufficient to establish a breach of fiduciary duty at trial. Though our summary judgment standard requires us to draw all reasonable inferences in favor of the non-moving party, there must be some evidence from which a favorable inference may be drawn. We therefore conclude that Charles and First Interstate were entitled to summary judgment in that they did not breach their fiduciary duties under either the 2004 Trust or SDCL 55-4-30 by investing the assets in a money market account. Since this determination is

dispositive, it is unnecessary to address whether First Interstate was a general trustee.

### 3. Whether there are disputed questions of fact regarding whether Charles and First Interstate Bank breached their fiduciary duties.

[¶29.]     Kelly's arguments on this issue center on supposed communications between Charles and First Interstate regarding the bank's trustee status and the decision to invest the 2004 Trust assets in a money market account. She claims that SDCL 15-6-56(f) entitles her to conduct further discovery. But, as First Interstate points out, such relief requires Kelly to "show[ ] how further discovery will defeat the motion for summary judgment." *Davies v. GPHC, LLC*, 2022 S.D. 55, ¶ 51, 980 N.W.2d 251, 265 (alteration in original). By Kelly's own account, the communications, if they existed, would at most clarify whether First Interstate was acting as a co-trustee and which party had taken the initiative to invest the assets. Since we have already held that placing the assets in the money market account was not a breach of fiduciary duty, additional discovery would not save Kelly from summary judgment. The circuit court did not abuse its discretion in denying the motion for further discovery.

### Conclusion

[¶30.]     We affirm the circuit court's decision granting summary judgment to Charles and First Interstate. Because the 2004 Trust specifically waives the Prudent Investor Rule and authorizes trustees to invest "irrespective of . . . nonproductiveness," Charles and First Interstate reasonably relied on the 2004 Trust documents in placing the assets into a money market account. Based on the

record before us, we conclude that this conservative investment approach does not rise to the level of gross negligence or bad faith necessary to impose default liability under SDCL 55-4-30.  Summary judgment is appropriate because there are no facts to suggest that Charles or First Interstate breached their fiduciary duty in managing the 2004 Trust.

[¶31.]      JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.